**Michael D. CROWE, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 93–550.**

United States Court of Veterans Appeals.

Decided Dec. 20, 1994.

As Amended Jan. 18, 1995.

Christopher H. Cox was on the brief, for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and John D. McNamee were on the brief, for appellee.

Before NEBEKER, Chief Judge, and IVERS and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, veteran Michael D. Crowe, appeals a March 4, 1993, Board of Veterans' Appeals (BVA or Board) decision denying entitlement to service connection for asthma on the ground that it "clearly and unmistakabl[y] preexisted service and was not aggravated thereby". Record (R.) at 7. For the

reasons that follow, the Court will vacate the BVA decision and remand the matter to the Board for further development and readjudication, and will dismiss the appeal to the extent that, pursuant to 38 C.F.R. § 3.105(a) (1993), it raises claims of clear and unmistakable error (CUE).

## I. Background

The veteran served on active duty with the Navy from May 1958 to February 1961 and from November 1962 to June 1970. R. at 6, 17, 28, 34, 51, 101. The May 1958 medical history report from his first induction examination showed a checkmark for asthma and also indicated that his brother had had "asthma, hay fever, [or] hives". R. at 28. The physician's notes stated: "Asthma age 4 [with] all recurrences since denied." R. at 29. The examiner reported that no abnormalities of the lungs or chest were noted at the veteran's induction examination. R. at 30. A June 1958 service medical record (SMR) stated shortly after induction: "Defects noted: Asthma 1945—[not considered disabling] age 5 (none since)". R. at 36. A January 1959 SMR indicated that an x-ray of the chest was "essentially negative". R. at 32.

A March 1960 SMR noted that the veteran was treated for asthma, "perennial, allergen unknown", for two days in a hospital; his chief complaints were "[p]ain in chest; difficult breathing; wheezing and coughing; and intermittent periods of extreme weakness over period of last four days." R. at 38. He was complaining of "substernal pain of mild to moderate intensity, dyspnea, and inability to take a deep breath", and appeared "very pale, sweating, and in moderate distress". *Ibid.* He related that he had a "history of several such 'attacks', which have occurred intermittently over the past year or so, and having a duration of four to five days, subsiding and returning again in two to three months", and that the " 'attacks' are becoming more frequent in occurrence of late." *Ibid.* He also related that during these episodes he had experienced a cough and occasionally expectorated a dark brown phlegm. He related that he "had been running up and down ladders and around the engine room". *Ibid.* The entry noted that "[a]pparently these episodes are aggravated by his work in the engine[ ]room, because the episodes are less severe while he is out in the fresh air." *Ibid.* The veteran related that "his mother told him that, as a child, during his first four years while the family lived in the San Francisco Bay region, he suffered from 'asthma', but that it cleared up when the family moved to Minnesota." *Ibid.* The veteran was treated with two shots of penicillin and within 24 hours felt "nearly normal" and was asymptomatic. *Ibid.* He was to be assigned as compartment cleaner, "away from engineroom heat at least until consultation with a Medical Officer can be arranged and results evaluated". *Ibid.* The record is silent as to whether such reassignment occurred.

An SMR later in March 1960 showed a diagnosis of "allergic asthma[,] [p]resently in remission" and stated that after evaluation, the veteran was to return to full duty. R. at 39. The examining physician noted that the veteran had a "[history] in childhood of wheezing [dyspneic] episodes". *Ibid.* A February 1961 examination report for discharge from his first period of service did not disclose any problems relating to asthma, and indicated that the veteran was qualified for release. R. at 43. A February 1961 x-ray of the veteran's chest was "negative". R. at 46.

An October 1962 examination for Navy reenlistment included a checkmark indicating that the veteran had had asthma, but another checkmark indicated that he did not have any blood relatives with "asthma, hay fever, [or] hives". R. at 47. A physician's note stated: "Asthma in early childhood. No recurrence." R. at 48, 50. A clinical evaluation showed no abnormalities as to the lungs and chest. R. at 49. An April 1963 SMR showed treatment of the veteran for coughing spells and vomiting blood and reported that he had coughing spells "whenever doing anything active" and pain in the upper abdomen when he coughed. R. at 52. The diagnosis was bronchitis. *Ibid.* A March 1964 examination did not mention asthma, and indicated that the veteran was qualified to perform his duties on active duty. R. at 55. In June 1965, he was twice treated for "asthmatic condition". R. at 53. The SMR stated: "[History] of asth-

ma. Attacks brought on [ ] by heavy exercise or work. Preceded by coughing." *Ibid.* An August 1965 SMR indicated that the veteran "continue[d] to have 'asthmatic attacks,' usually at [night], and often brought on by 'getting too hot.'" R. at 57. It further reported that he occasionally experienced wheezing, "but dyspnea is usually nightly, preceded by coughing". *Ibid.* The entry noted that his chest was then clear and that medication was prescribed. In September, the veteran returned for more medication for his asthma attacks. *Ibid.*

In March 1968, a consultation was requested because he had "had asthma attacks since 1965 which ha[d] progressed" and were "becoming more severe and at closer intervals". R. at 63. A consultation report related that the veteran had noted an increase in the number of episodes and a history of asthma since age five. *Ibid.* His chest was found to be clear with cough. A chest x-ray report showed a "prominent l[eft] hilar shadow". R. at 63 (hilar—of, relating to, affecting, or located near a hilum; hilum—the depression in the medial surface of a lung that forms the opening through which the bronchus, blood vessels, and nerves pass, WEBSTER'S MEDICAL DESK DICTIONARY 296 (1986) [hereinafter WEBSTER'S]). More x-rays were requested, but the record is silent as to whether they were ever taken. *Ibid.* The impression was upper respiratory infection. *Ibid.*

A consultation was requested again the next day. At that time, the veteran indicated that he wanted a transfer to a dry climate and that he needed a medical approval. R. at 64. The consultation report prepared by Dr. M. Fox, a medical corps physician, indicated that the veteran had related "a [history] of bronchial asthma dating back to [five] years of age which he states became more pronounced in his last two years of high school." *Ibid.* He relates that "recent episodes are ... precipitated by working in the engine room which, he states renders him unsuitable for his present rate [position]." *Ibid.* The diagnosis was bronchial asthma. *Ibid.* Dr. Fox prescribed medication. R. at 65.

A January 1969 SMR indicated that the veteran's health record was "reviewed carefully with regard to history of asthma since age [five], and recurrent evaluations by corpsmen and physicians 1963 to 1968 in which a history of [shortness of breath] while working in the engine room is the chief complaint." R. at 68. The report stated that the veteran had experienced no wheezing or shortness of breath at his present duty station, and that there is "no reason why [he] should be prevented from reenlistment on medical reasons". A physical examination showed full expansion of chest, no wheezing, and attested to his ability to blow out a match with "mouth wide open at 10 inches". *Ibid.* The diagnosis was "no evidence of asthma or chronic obstructive lung disease". *Ibid.* An April 1970 discharge examination did not mention asthma. The veteran was found to be physically qualified for discharge. R. at 71-4.

In December 1970, the veteran filed a claim with a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) seeking service connection for asthma and stating that in 1959 it was "aggravated by the service—not bothered before engine room work in Navy". R. at 19-20. A March 1971 VA examination included a special pulmonary examination by Dr. F. Ruzicka, M.D. R. at 84-8. The examination report stated: "No evidence of pulmonary disease can be detected at the present time." R. at 88. The report identified the veteran's complaints as "a mild slightly productive cough, less than 1 tbsp. of whitish sputum ... off and on bloody[,] ... wheezing off and on, and some shortness of breath just on extreme exertion." *Ibid.* Physical examination was negative; chest x-ray was "essentially negative". The veteran reportedly stated that he had experienced "sinus trouble all his life and [an] asthmatic-like condition in his childhood but had never experienced acute attacks of bronchial asthma, just wheezing off and on, no allergies are known". *Ibid.* A March 1971 chest x-ray revealed normal heart and lungs with a "congenital anomaly off one of the right ribs". R. at 90.

An April 1971 VARO decision denied service connection for asthma, by aggravation, because asthma was "[n]ot found on last ex-

amination 3–18–71." R. at 94–5. In April 1972, the veteran attempted to reopen his claim. He submitted a private medical report from Dr. Ross Weller, an allergist, to whom the veteran had been referred by Dr. Harold Rand, a private physician. Dr. Rand had noted that the veteran had "a history of onset of bronchial asthma at [the] age of [two years] and a recurrence of it in 1959". R. at 109. Dr. Weller's report indicated that the veteran had been examined on March 6, 1972, and that clinical history revealed "[w]heezing and shortness of breath of twelve years duration, perennial in nature, and usually improved during the summer," and loss of sleep because of asthma. R. at 107, 109. The veteran reportedly believed he "had some bronchial asthma at the age of five," experienced wheezing when "in contact with paints," and had lost 16 pounds during the past year. *Ibid.* Physical findings showed "[s]lightly swollen nasal membranes, with no obstruction," and negative findings for the heart and lungs. *Ibid.* The diagnosis was "bronchial asthma, mixed type," and the recommended treatment was medication. The report indicated that the veteran's chest was clear on a subsequent visit, and that he "was remarkably improved on the medication and was sleeping well". *Ibid.*

An April 1972 RO decision denied the veteran's claim to reopen his prior claim for service connection for asthma, by aggravation, because his "presently diagnosed bronchial asthma . . . existed prior to enlistment". R. at 111, 113. On appeal to the Board, the veteran's authorized representative submitted an October 9, 1972, statement from Dr. Weller, asserting that a grant of service connection for asthma was warranted. R. at 123–25. Dr. Weller's statement reported that since March 1972 "a study of [the veteran's] chart showed that in May 1972 he had required additional epinephrine for his severe asthma attacks [that] occurred particularly after physical exertion". R. at 125. It also noted that he had "improved in the summer and fall of 1972"; that it appeared "that his hyposensitization and symptomatic drugs are aiding him considerably"; and that, "[s]ince his disease has a twelve year history, it seems evident that further treatment is indicated, at least until [he] has had a

twelve-month period of being symptom-free." R. at 125. In October 1972, an RO decision on appeal found "no evidence sufficiently new and material to warrant a rating change". R. at 122. The Board's December 1972 decision denied the veteran's claim to reopen for service connection for asthma. R. at 142–43.

In June 1991, the veteran sought again to reopen his claim for service-connected asthma. R. at 149. He submitted a May 25, 1991, letter from Dr. Douglas J. Coy, a private physician from Grand Rapids Medical Associates, which stated that the veteran's asthma symptoms had increased "over the past ten years with frequent episodes of flare-ups necessitating a full-scale treatment regime including steroids, antibiotics, inhalers, etc." R. at 150. At times, the report stated, the veteran had experienced "mild obstructive pulmonary disease on pulmonary function and generally speaking gets along fairly well". *Ibid.* The letter referred to "the persistence and increased frequency as well as severity of asthma over this period of time". *Ibid.*

The veteran also submitted medical records from Itasca Medical Center (IMC), a private facility in Grand Rapids, Minnesota, of treatment for asthmatic conditions in June 1979, December 1984, February and May 1989, and November and December 1990. R. at 153, 155, 157, 158, 159, 161. Many of these hospital visits apparently resulted from his running out of asthma medication. A 1991 summary memorandum from his employer, Blandin Paper, indicated that he was absent from work approximately 78 days from May 1977 to February 1991 due to asthma and breathing problems. R. at 162. The IMC records further indicated that from January 30 to February 2, 1991, the veteran had been admitted for "recurrent intrinsic asthma," secondary to "diabetes mellitus, Type II". R. at 151. He was treated with nebulizers, oxygen therapy, antibiotics, and Prednisone, made a "rapid response", was maintained on his medication, was discharged, and was to be "followed on an outpatient basis". *Ibid.*

An August 1991 RO decision denied reopening of the veteran's claim for service

connection for asthma, concluding that "[n]o new and material evidence has been presented which would permit reopening of the claim to grant service connection." R. at 164. In September 1991, he filed a Notice of Disagreement (NOD). R. at 168–69. In February 1992, he submitted an October 1991 notarized statement from his mother and copies of childhood medical records in support of his claim. R. at 178–82. His mother's statement asserted that she recalled that the veteran had "never had any history of [a]sthma as a child, not until after he enlisted in the Navy". R. at 179. She further stated that it was "his younger brother, Richard James Crowe, who was bothered with [a]sthma at a very early age". *Ibid.*

A report from a private physicians' practice, Jolin, Jolin and McKenna (JJ & M), included notes of treatment of the veteran from June 15, 1940 to March 7, 1962. R. at 181–82. These records did not mention asthma; they did note that in August 1949 (when the veteran was six years old) he had experienced "[l]arge swollen glands in neck"; that at nine years old he had experienced a "dry hacking cough . . . at [night]" and had "throat difficulty" and a "clear chest"; and that in May 1955 (when he was 14 years old) he had experienced a cough that lasted two weeks. *Ibid.* An April 1992 RO decision on appeal reviewed the additional records and statement, and confirmed the prior RO denial. R. at 184.

In May 1992, the veteran filed a VA Form 1–9, Appeal to the BVA (1–9 Appeal), asserting that "there is no basis of history of asthma as a child and that asthma had its onset and diagnosis during my active service"; that in August 1949 and May 1955 he had been seen because of a cough but his chest had been clear and there had been no diagnosis, and that he disagreed with a statement by Dr. Rand in a VA Statement of the Case that the disease had its onset when he was two years old. R. at 195. The veteran further stated that when he had enlisted in the Navy, his entrance physical exam had been "clear". He stated that he had first been diagnosed with asthma while on active duty. R. at 196.

In the March 4, 1993, decision here on appeal, the Board found that the evidence received, after the Board's December 1972 denial, was new and material, and reopened the veteran's claim, but then denied it on the merits. R. at 5–13. After reviewing the evidence, the Board determined that asthma "clearly and unmistakabl[y] preexisted service and was not aggravated thereby". R. at 7. The Board identified the following evidence as having been submitted after the Board's 1972 decision: (1) private medical records from 1979 to 1991; (2) private medical records from 1940 to 1962; and (3) a statement from the veteran's mother. R. at 8. The Board found that the private medical records from 1940 to 1962 "do not specifically show the presence of asthma," and that they constituted new and material evidence. *Ibid.* The Board then found on the merits that "it is clear that the veteran had asthma prior to service, during service and subsequent to service", and rejected the current statements of the veteran and his mother (that he did not have asthma prior to service) as contradicted by the veteran's statements during service. The Board considered his in-service statements more reliable because they were made in connection with treatment. R. at 11. The Board also found that the preexisting asthma was not aggravated by service; that his asthma had "flared up" before, during, and after service; and that during service the veteran's condition had not required any period when he was limited in his duty assignments. R. at 12.

## II. Analysis

### A. New and Material Evidence

 Pursuant to 38 U.S.C. § 5108, the Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that claim. *See* 38 U.S.C. § 7104(b). On claims to reopen a previously and finally disallowed claim, the BVA must conduct a "two-step analysis" under section 5108. *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material", when viewed in the context of all the evidence. *See Colvin v. Derwinski*, 1

Vet.App. 171, 174 (1991); *Manio,* 1 Vet.App. at 145. If the evidence is new and material, the Board must then review it "in the context of" the old evidence to determine whether the prior disposition of the claim should be altered. *Jones (McArthur) v. Derwinski,* 1 Vet.App. 210, 215 (1991).

The Court has synthesized the applicable law as follows:

> "New" evidence is that which is not merely cumulative of other evidence of record. "Material" evidence is that which is relevant to and probative of the issue at hand and which, as this Court stated in *Colvin, supra* ... must be of sufficient weight or significance (assuming its credibility) that there is a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome.

*Cox v. Brown,* 5 Vet.App. 95, 98 (1993); *see also Justus v. Principi,* 3 Vet.App. 510, 513 (1992) (in determining whether evidence is new and material, "the credibility of the evidence is to be presumed"). The determination as to whether evidence is "new and material" is subject to de novo review in this Court under 38 U.S.C. § 7261(a)(1). *See Masors v. Derwinski,* 2 Vet.App. 181, 185 (1992); *Jones,* 1 Vet.App. at 213; *Colvin,* 1 Vet.App. at 174.

■ The Board found that the evidence was new and material and reopened the claim, but denied service connection for asthma on the merits. The Court holds, as a matter of law, that the veteran did submit new and material evidence. Both the JJ & M records and the notarized statement by the veteran's mother, which tend to show that he did not have asthma prior to service, are relevant to and probative of the issue of whether the veteran had asthma preexisting service and, when viewed in the context of all the evidence, they create a reasonable possibility of changing the outcome of the prior BVA decision. *See Cox, Jones,* and *Colvin* all *supra.* The Board was thus required in this case, as it did, to reopen the claim and to review the new evidence in the context of the old to determine whether the prior disposition should be altered. *See Jones, supra.*

We thus proceed to review the Board's merits decision.

## B. Reasons or Bases

■ The Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record. *See* 38 U.S.C. § 7104(d)(1). The statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See Simon v. Derwinski,* 2 Vet.App. 621, 622 (1992); *Masors,* 2 Vet. App. at 188; *Gilbert v. Derwinski,* 1 Vet.App. 49, 57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of all material evidence favorable to the veteran. *See Gabrielson v. Brown,* 7 Vet.App. 36, 39 (1994); *Abernathy v. Principi,* 3 Vet.App. 461, 465 (1992); *Simon, supra; Peyton v. Derwinski,* 1 Vet. App. 282, 285 (1991); *Hatlestad v. Derwinski,* 1 Vet.App. 164, 169–70 (1991) (*Hatlestad I* ); *Ohland v. Derwinski,* 1 Vet.App. 147, 149 (1991); *Gilbert, supra.*

■ The Board must support its medical conclusions on the basis of independent medical evidence in the record or through adequate quotation from recognized treatises; it may not rely on its own unsubstantiated medical judgment. *See Thurber v. Brown,* 5 Vet.App. 119, 122 (1993); *Hatlestad v. Derwinski,* 3 Vet.App. 213, 217 (1992) (*Hatlestad II* ); *Colvin,* 1 Vet.App. at 175. "If the medical evidence of record is insufficient, or, in the opinion of the BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory opinion [or] ordering a medical examination". *Colvin, supra; see Hatlestad II, supra; see also* 38 U.S.C. § 7109, 38 C.F.R. § 20.901(a), (d) (1993).

■ Pursuant to 38 U.S.C. § 5107(a), once a claimant has submitted a well-grounded claim, the Board is required to assist that claimant in developing the facts pertinent to the claim. *See* 38 C.F.R. § 3.159 (1993); *Littke v. Derwinski,* 1 Vet.App. 90, 91–92

(1990). This duty to assist may include "the conduct of a thorough and contemporaneous medical examination, one which takes into account the records of prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one." *Green (Victor) v. Derwinski*, 1 Vet.App. 121, 124 (1991); *see Wilson (Lawrence) v. Derwinski*, 2 Vet.App. 16, 21 (1991); *Parker v. Derwinski*, 1 Vet.App. 522, 526 (1991); *Moore (Howard) v. Derwinski*, 1 Vet.App. 401, 405 (1991); *EF v. Derwinski*, 1 Vet.App. 324, 326 (1991). *See also Schafrath v. Derwinski*, 1 Vet.App. 589, 595 (1991); 38 C.F.R. § 4.2 (1993) ("if the [examination] report does not contain sufficient detail, it is incumbent on the rating board to return the report as inadequate for evaluation purposes").

The appellant asserts that the Board erred by failing to consider and discuss adequately the statutory and regulatory provisions pertaining to the presumptions of soundness and aggravation. Because the veteran served during wartime as well as during peacetime after December 31, 1946, he is entitled to the benefit of these presumptions. *See* 38 U.S.C. §§ 1137, 1110; 38 C.F.R. §§ 3.2(f), 3.304(a) (1993).

■ *1. Service incurrence:* Generally, veterans are presumed to have entered service in sound condition as to their health. *See* 38 U.S.C. § 1111; *Bagby v. Derwinski*, 1 Vet.App. 225, 227 (1991). The presumption of sound condition provides:

> [E]very veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders *noted* at the time of examination, acceptance, and enrollment, or where *clear and unmistakable evidence* demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service.

38 U.S.C. § 1111 (emphasis added); *see also* 38 C.F.R. § 3.304(b). This presumption attaches only where there has been an induction examination in which the later-complained-of disability was not detected. *See Bagby, supra.* The regulation provides expressly that the term "noted" denotes "[o]nly such conditions as are recorded in examina-

tion reports," 38 C.F.R. § 3.304(b), and that "[h]istory of preservice existence of conditions recorded at the time of examination does not constitute a notation of such conditions", 38 C.F.R. § 3.304(b)(1) (1993).

■ In the present case, the veteran's 1958 and 1962 entrance examination records did not state that he had asthma at the time of induction, and clinical evaluations performed at the time of those examinations showed no abnormalities as to his lungs and chest. R. at 29–30, 48–50. Hence, asthma was not "recorded in [an] examination report[ ]" within the meaning of § 3.304(b). The physician's note at induction in 1958 referred only to the reported existence of asthma when the veteran was four years old with no subsequent recurrence. It stated: "Asthma age 4 [with] all recurrences since denied". R. at 29. This was part of the veteran's medical "history". His 1962 entrance examination similarly stated as part of his "history": "Asthma in early childhood. No recurrence." Accordingly, the Court holds that asthma was not "noted", as defined by 38 U.S.C. § 3.304(b), at entry on either of his (apparently) two periods of service, and that the presumption of sound condition, therefore, attaches. Although the Board did not *explicitly* address the question whether that presumption applied in this case, to the extent that it may have done so implicitly, any such conclusion to the contrary is error.

■ Under 38 U.S.C. § 1111 and 38 C.F.R. 3.304(b), the presumption of soundness may be rebutted by clear and unmistakable evidence that an injury or disease existed prior to service. The burden of proof is on VA to rebut the presumption by producing clear and unmistakable evidence that the veteran's asthma existed prior to service and (as will be discussed in part II.B.2., below) if the government meets this requirement, that the condition was not aggravated in service. *See Kinnaman v. Principi*, 4 Vet.App. 20, 27 (1993). The burden is a formidable one. *Ibid.* Whether or not there is such evidence is a legal determination which the Court reviews de novo. *See Kinnaman, supra; Bagby, supra.* In determining whether there is clear and unmistakable evidence that

the injury or disease existed prior to service, the Court considers the history recorded at the time of examination together with "all other material evidence". *See* 38 C.F.R. § 3.304(b)(1). In determining the inception of the veteran's asthma, the applicable regulation requires that the following is to be considered: "medical judgment", "accepted medical principles", history with "regard to clinical factors pertinent to the basic character, origin and development of such injury or disease", and a "thorough analysis of the evidentiary showing and careful correlation of all material facts, with due regard to accepted medical principles pertaining to the history, manifestations, clinical course, and character of the particular injury or disease or residuals thereof". *See* 38 C.F.R. § 3.304(b)(1).

▌ Undertaking an independent examination of whether the facts found by the BVA satisfactorily rebut the presumption of sound condition, *see Bagby*, 1 Vet.App. at 227, the Court holds that the record is insufficient to permit effective judicial review to determine whether there was clear and unmistakable evidence that the veteran entered service with preexisting asthma, and thus will remand the matter to the Board. The record does not contain a medical opinion addressing the relevant medical question— namely, does a childhood history of swollen neck glands, a cough, and some throat difficulty, in the absence of any medical records showing treatment for, or a diagnosis of, asthma during the veteran's first 18 years, conclusively establish that the veteran had asthma at entry into service in 1958? An independent medical opinion or a VA Veterans Health Administration opinion is needed on this question to produce an informed decision. *See* 38 C.F.R. §§ 4.2, 20.901(a), (d); 38 U.S.C. § 7109. Indeed, such medical-evidence requirement also flows from the regulatory provisions in § 3.304(b)(1) and (2) since the generally "accepted medical principles" noted therein are no longer, under *Austin v. Brown*, 6 Vet.App. 547 (1994), and *Thurber, Hatlestad II,* and *Colvin,* all *supra,* appropriately provided by a physician Board member, such as there was in this case, or, without further justification, by a Board medical adviser. Instead, the BVA may base

such a determination only on independent medical evidence *of record.*

▌ In deciding that all relevant evidence of record established that "the veteran had asthma prior to service", R. at 11, the Board failed to discuss the "clear and unmistakable evidence" standard or to point to any such evidence that asthma had preexisted either of the veteran's periods of service. The Board simply concluded that the evidence showed that the veteran had asthma prior to service, and did not explain how the veteran's reported history of asthma at age 2, 4, or 5, with no recurrence, could constitute "clear and unmistakable evidence" of preexisting asthma. Nor did the Board discuss, as it was required to do, *see Gabrielson, supra,* the records of JJ & M in deciding whether there was preexisting asthma. The Board was required to provide an adequate statement of reasons or bases for any conclusion that the presumption of sound condition did not apply or that it was rebutted by clear and unmistakable evidence. It failed to do so.

A remand to the Board is also required because it failed to cite, let alone discuss, 38 C.F.R. § 3.304 which is clearly raised by the facts in this case. *See Schafrath*, 1 Vet.App. at 592–93 (holding that the BVA's failure to acknowledge or consider regulation (38 C.F.R. § 4.40 (1991)) governing application of a compensable rating due to pain, which was "made potentially applicable through assertions and issues raised in the record", was unlawful where BVA did not acknowledge or consider regulation, even though it was never mentioned by claimant); *see also EF*, 1 Vet. App. at 326 (recognizing that VA's statutory 'duty to assist' must extend liberal reading of claimant's statements to include issues raised in all documents or oral testimony submitted prior to BVA decision).

The Board's failure to adhere to 38 U.S.C. § 7104(a) and *Schafrath* and *EF*, both *supra,* by not basing its decision on all "applicable provisions of law and regulation" was, under 38 U.S.C. § 7261(a)(3)(A), "not in accordance with law", and requires the Court to vacate the BVA decision. *See Douglas v. Derwinski*, 2 Vet.App. 435, 439 (1992); *Payne v.*

*Derwinski,* 1 Vet.App. 85, 87 (1990). The Board is not free to ignore an applicable regulation, and the evidence supporting its application, despite an appellant's failure to raise explicitly in his NOD or 1–9 Appeal the applicability of that regulation and evidence. *See EF, Payne,* and *Schafrath,* all *supra; see also Schaper v. Derwinski,* 1 Vet.App. 430, 434 (1991) (quoting *Smith v. Derwinski,* 1 Vet.App. 267, 272–73 (1991)) (" '[i]n reviewing a benefits decision, the Board must consider the entire record, all of the evidence, and all of the applicable laws and regulations' "); *Peyton,* 1 Vet.App. at 286–87 (instructing Board on remand to consider potentially applicable regulations which it failed to cite or discuss).

The Board also failed to comply with its duty to assist in the development of the facts, a duty imposed on the Secretary because the claim is well grounded here. The Board correctly found that there was new and material evidence to reopen the claim, which carries with it a finding of well groundedness, *see Robinette v. Brown,* —— Vet.App. ——, ——, No. 93–985, slip op. at 12, 1994 WL 495078 (Sept. 12, 1994), *mot. for recons. granted on other grounds* (Oct. 21, 1994). That duty to assist required that the Board seek an independent medical opinion, as discussed above. On remand after further development, unless the Board finds clear and unmistakable evidence to rebut the presumption of soundness, the veteran is entitled to be awarded service connection because in March 1968 he was diagnosed with "bronchial asthma" (R. at 65), and the Board, in its March 1993 decision, conceded that he had asthma in service and "until 1991" (the year he filed his claim to reopen with the RO) (R. at 12).

■■■ *2. Aggravation:* Even if the veteran's asthma is properly found to have preexisted service, the presumption of aggravation must also be addressed. When a condition is properly found to have been preexisting (either because it was noted at entry or because preexistence was demonstrated by clear and unmistakable evidence), the presumption of aggravation provides:

> A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, *where*

*there is an increase in disability during such service,* unless there is a specific finding that the increase in disability is due to the natural progress of the disease.

38 U.S.C. § 1153 (emphasis added); *see also* 38 C.F.R. § 3.306(a) (1993). Furthermore, 38 C.F.R. § 3.306(b) provides that, as to veterans of wartime service, "[c]lear and unmistakable evidence (obvious or manifest) is required to rebut the presumption of aggravation" during service. It is the Secretary's burden to rebut the presumption of in-service aggravation. *See Laposky v. Brown,* 4 Vet.App. 331, 334 (1993); *Akins v. Derwinski,* 1 Vet.App. 228, 232 (1991). "[I]n short, a proper application of [38 U.S.C. § 1153 and 38 C.F.R. § 3.306(a), (b) ] . . . places an onerous burden on the government to rebut the presumption of service connection" and "in the case of aggravation of a preexisting condition, the government must point to a specific finding that the increase in disability was due to the natural progress[ ] of the disease". *Akins,* 1 Vet.App. at 232. Under *Bagby, supra,* the Court reviews de novo the question whether the presumption was rebutted by clear and unmistakable evidence.

In the instant case, the Board's reasons or bases are deficient in another material aspect—explaining its conclusion with respect to the presumption of aggravation under the applicable statutory and regulatory requirements. The Board concluded: "A review of the evidence leads us to conclude that" the veteran's "preexisting asthma" did not undergo "an increase in severity during service". R. at 11. The Board concluded that the "medical records that have been obtained consistently show that the veteran has experienced periods during which his asthma has flared up, followed by periods when his pulmonary functions were considered normal". R. at 12. (A flare-up is defined as "a sudden increase in symptoms of a latent or subsiding disease." WEBSTER's at 245.) The Court has held that "[t]emporary or intermittent [in-service] flare-ups" of a preservice condition, without evidence of worsening of the underlying condition (as contrasted to symptoms), "are not sufficient to be considered 'aggravation in service' ". *Hunt v. Derwinski,* 1 Vet. App. 292, 296–97 (1991) (finding that, al-

though there was temporary worsening of symptoms, the condition itself, which lent itself to flare-ups, did not worsen, and that the disability remained unaffected by the flare-ups).

Reviewing the evidence de novo under *Bagby*, the Court concludes that the record is insufficient to permit effective judicial review to determine whether there was a worsening of the veteran's underlying asthma during service. Furthermore, if the asthma did worsen during service, the Court cannot determine on the current record whether there was clear and unmistakable evidence that such worsening was due to the natural progress of the asthma. The record lacks independent-medical-opinion evidence which could shed light on these issues. (The Court notes that the Board apparently determined that there was a sudden increase in the veteran's asthma symptoms during service (R. at 12), a conclusion that appears to have a plausible basis in the record (*see, e.g.,* R. at 38, 53, 63).) Hence, remand is needed for VA to obtain such a medical opinion on those two questions and also on whether the asthma symptoms in service rendered the veteran more susceptible to asthma attacks later, such as between 1979 and 1991. *See* R. at 150–62. Also, the medical opinion should address whether a worsening of the condition could reasonably have been expected to have been found at the time of the separation examinations. *See* 38 C.F.R. § 20.901(a), (d).

Although the Board stated, while discussing the contents of SMRs, that the asthma-attack episodes "were apparently aggravated by work in the engine room" (R. at 9), it failed to discuss this evidence in connection with the presumption of aggravation (R. at 12). Furthermore, the Board failed to discuss the significance of the apparent lack of need for medical attention by the veteran in the seven years after he left service, between May 1972 and June 1979, and of his being removed from the engine-room environment, and the impact of that evidence on the presumption that his asthma had been aggravated during service. Additionally, the Board failed to explain the applicability of the presumption of aggravation with respect to each period of service, but, rather, concluded generally that the veteran's asthma was not aggravated by service. Because the presumption of aggravation could potentially apply to either period of service, the Board is required to explain its conclusions with respect to the second period if it finds no aggravation during the first period.

## C. CUE

■ The appellant argues that under 38 C.F.R. § 3.105(a) (1993), CUE was committed in the Board's December 1972 denial of his application for service connection for asthma in that the Board had then failed to apply the benefit-of-the-doubt rule and that VA had failed in its duty to assist. However, the appellant has raised that CUE issue here for the first time in his brief. In addition, in his brief the appellant has also raised for the first time the issue of CUE in the 1971 RO decision. Because neither claim was raised to or adjudicated by the BVA, the Court lacks jurisdiction to review them. *See Russell v. Principi*, 3 Vet.App. 310, 315 (1992) (en banc) ("necessary jurisdictional 'hook' for this Court to act is a decision of the BVA on the specific issue of 'clear and unmistakable error' "); *see also Lasovick v. Brown*, 6 Vet. App. 141, 152 (1994).

As to the claim of CUE in the 1972 BVA decision, the U.S. Court of Appeals for the Federal Circuit recently held that the CUE regulation in § 3.105(a) applies only to prior RO decisions and is not available to mount a collateral attack on a prior Board decision. *Smith v. Brown*, 35 F.3d 1516 (Fed.Cir.1994). *See also Russell*, 3 Vet.App. at 314 (benefit-of-the-doubt rule cannot be applied through a CUE claim because an error either undebatably exists or there was no error within the meaning of § 3.105(a)); *Caffrey v. Brown*, 6 Vet.App. 377, 383–84 (1994) (failure to fulfill duty to assist cannot constitute CUE), *mot. for en banc review denied* (Oct. 25, 1994); *but see id.* at 384–88 (Steinberg, J., concurring in part and dissenting in part).

Accordingly, the appeal as to these two CUE claims must be dismissed for lack of jurisdiction, without prejudice to the appellant's properly raising in VA's administrative adjudication process a CUE claim as to the 1971 RO decision.

### D. Benefit-of-the-Doubt Rule

According to the benefit-of-the-doubt rule, there need be only an "approximate balance of positive and negative evidence in order [for a VA claimant] to prevail". 38 U.S.C. § 5107(b); *see Gilbert,* 1 Vet.App. at 54. Further, the "reasons or bases" requirement of 38 U.S.C. § 7104(d)(1) applies to the Board's application of the benefit-of-the-doubt rule. *See Gilbert,* 1 Vet.App. at 58. Where, as here, "there is significant evidence in support of an appellant's claim, the Board must provide a satisfactory explanation as to why the evidence was not in equipoise." *Williams v. Brown,* 4 Vet.App. 270, 273–74 (1993). Instead, in its March 1993 decision the Board did no more than state a conclusion that "the preponderance of the evidence is against a grant of service connection for asthma". R. at 6. On remand, in evaluating the evidence as to service-incurrence of asthma or aggravation of asthma in service, the Board must explain carefully its conclusions as to the applicability of the benefit-of-the-doubt rule as to each material issue in the case. *See Williams, supra; Sheets v. Derwinski,* 2 Vet.App. 512, 516 (1992); *O'Hare v. Derwinski,* 1 Vet.App. 365, 367 (1991).

### III. Conclusion

Upon consideration of the record and the pleadings of the parties, the Court vacates the March 4, 1993, BVA decision, and remands the matter to the Board for prompt further development and readjudication, in accordance with all material of record and applicable law and regulation—all consistent with this opinion. *See Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991). In its reasons or bases, the Board must take account of the statutory and regulatory requirements concerning the presumptions of sound condition and, if indicated, of aggravation, *see* 38 U.S.C. §§ 1111, 1153; 38 C.F.R. §§ 3.304(b), 3.306(a), and the Board may rely on only medical evidence in the record to support any medical conclusions. *See Thurber, Hatlestad II,* and *Colvin* all *supra.* If the Board concludes that there is clear and unmistakable evidence that the veteran's asthma preexisted his first period of service, it must discuss the applicability of the presumption of aggravation with respect to the first peri-od of service; if both the presumptions of sound condition and, if indicated, of aggravation, are rebutted as to the first period of service, the Board must discuss the applicability of the presumptions with respect to the second period of service. On remand, the appellant "will be free to submit additional evidence and argument" on the remanded issues. *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). The CUE claims regarding the Board's December 1972 decision and the 1971 RO decision are dismissed for lack of jurisdiction. *See Smith, supra; Russell, supra.*

A final decision by the Board following the remand herein ordered will constitute a new decision which, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of that new decision is mailed to the appellant.

VACATED AND REMANDED; DISMISSED IN PART.