# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 99-575

JIMMY D. ADAMS, APPELLANT,

V.

TOGO D. WEST, JR.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided    May 1, 2000   )

*Ronald L. Smith*, of Washington, DC, was on the pleadings for the appellant.

*Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; *Mary Ann Flynn*, Deputy Assistant General Counsel; and *Ralph D. Davis*, of Washington, DC, were on the pleadings for the appellee.

Before KRAMER, IVERS, and GREENE, *Judges.*

KRAMER, *Judge*:  The appellant, Jimmy D. Adams, appeals a December 10, 1998, decision of the Board of Veterans' Appeals (BVA or Board) denying a claim for service connection for adrenal insufficiency as not well grounded, remanding to a VA regional office (RO) for further development a claim for service connection for hypothyroidism, and denying claims for service connection for hypogonadism and growth hormone deficiency on the basis that those conditions preexisted, and were not aggravated by, service.  Record (R.) at 1-12.  This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).  The appellant has filed a brief and reply brief, and the Secretary has filed a brief.

With regard to the remanded claim for service connection for hypothyroidism, the Board's remand is not a final decision ripe for review, and the Court, accordingly, lacks jurisdiction over the remanded claim.  Because it lacks jurisdiction, the Court will dismiss any appeal with respect to it.  *See Link v. West*, 12 Vet.App. 39, 47 (1998); *Marlow v. West*, 11 Vet.App. 53, 55 (1998); *see also* 38 C.F.R. § 20.100 (1999) (Board remand not final decision).  Moreover, the Court will not further

address the claim for adrenal insufficiency, which the Board denied as not well grounded. The appellant has not raised that issue in his brief, and thus the matter is deemed abandoned. *See Ford v. Gober*, 10 Vet.App. 531, 535-36 (1997) (citing *Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993)). Accordingly, because there is no appeal with respect to this claim, the Court will affirm the Board's decision as to it. For the reasons that follow, the Court will otherwise vacate the decision of the Board and remand a matter for further proceedings consistent with this decision.

With respect to the remaining claims for service connection for hypogonadism and for growth hormone deficiency, the Court notes as a preliminary matter that the Board found those claims to be well grounded, R. at 6, and that the Secretary does not dispute that finding. Upon review of the record, the Court concludes that the Board's determination that the claims were well grounded is correct, especially given the fact that the appellant filed his claims prior to discharge from service. R. at 16, 232; *see Hampton v. Gober*, 10 Vet.App. 481, 482 (1997) (claim for left knee disability well grounded where claim filed close in time to discharge from service, service medical records indicate treatment for knee condition in service, and separation examination containing diagnosis of knee condition "provides evidence of both a current left knee condition and a relationship to service").

The Court has reviewed the record on appeal and the filings of the parties, and concludes that the issue before it is whether the Board erred in determining that there was clear and unmistakable evidence to rebut the presumption of sound condition upon entrance into service. *See* 38 U.S.C. § 1111 ("every veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service"); *Crowe v. Brown*, 7 Vet.App. 238, 245 (1994) (Secretary's burden to rebut presumption of soundness by clear and unmistakable evidence "is a formidable one"). "Whether or not there is such evidence is a legal determination [that] the Court reviews de novo." *Id.* In essence, the evidence that the Board determined had satisfactorily rebutted the presumption of soundness consists of the following excerpts from an exceptionally thorough and well-written compensation and pension examination report by Michael Lawson, M.D., dated February 27, 1998:

Based on the initial evaluation [during service] of the [the appellant's] endocrine deficiencies[,] at the National Naval Medical Center in Bethesda, [Maryland,] it is my opinion that the patient *was clearly hypogonadal* on a central basis and also *there was compelling evidence that he was also growth hormone deficient at that time*.

. . . .

IMPRESSION:

1. The clinical record and the current evaluation established the diagnosis of central hypogonadism with the patient currently testosterone deficient.

2. There is strong suspicion that the patient also has growth hormone deficiency based on the evaluation[s during service] at the National Naval Medical Center in Bethesda in 1992 and 1993, as well as the fact that he currently has a low IgF1 level. This impression will need to be corroborated by a repeat insulin stress test following two months of testosterone replacement.

. . . .

Addressing issues raised specifically in the Compensation and Pension exam[ination] request, I believe there is evidence that the [appellant's] *hypogonadism and growth hormone deficiency may have preexisted his admission to the service* based on the fact that his epiphyses were not found to be closed on his initial bone radiograph when he was evaluated at the National Naval Medical Center in Bethesda. He also was reported to have had a bone age of thirteen years at that time when his chronological age was eighteen. It is equally clear that there is no evidence to suggest that the family of the [appellant was] aware of these problems prior to his admission to the armed services. These problems were discovered while he was on active duty following the work-up of an anemia. The fact that the [appellant] even currently has small, soft[,] testes and sparse body hair *would also support the likelihood that this condition existed prior to his beginning his active military service*. There is also evidence from the record at the National Naval Medical Center that the [appellant], following his treatment with testosterone and a short treatment with gonadotropin releasing hormone, . . . may have grown a full inch in height. His current bone radiographs also indicate that his epiphyses are now closed, with his having a[n] adult bone pattern. *It is my own opinion that the [appellant's] problems would not have been aggravated by his active duty service*, but it is possible that these problems may not have been addressed as comprehensively as might have been done with his being outside of the service had he been limited to one institution with endocrine facilities in his follow-up.

R. at 712, 715-16 (emphasis added).

The appellant argues in part that any medical opinion evidence is insufficient as a matter of law to rebut the 38 U.S.C. § 1111 presumption of soundness, and that an opinion expressed in equivocal terms can never amount to clear and unmistakable evidence. The Secretary replies that

the Court's caselaw indicates that the use of medical evidence is contemplated for purposes of rebutting the presumption of sound condition, and that, in essence, Dr. Lawson's opinion, based on the appellant's medical history, is not equivocal. As to the former argument, the Court agrees with the Secretary. The Court notes that nothing in the language of section 1111 precludes utilization of such medical evidence. Indeed, the Secretary's implementing regulation, 38 C.F.R. § 3.304(b) (1999), as the Secretary indicates, clearly calls for the use of such medical evidence. *See* 38 C.F.R. § 3.304(b)(1) (determinations whether evidence clearly and unmistakably rebuts the presumption of soundness should be based on medical judgment, accepted medical principles, history with regard to clinical factors pertinent to basic character, origin, development of injury or disease, and "thorough analysis of the evidentiary showing and careful correlation of all material facts, with due regard to accepted medical principles pertaining to the history, manifestations, clinical course, and character of the particular injury or disease or residuals thereof"); *see also Harris v. West*, 203 F.3d 1347 (Fed. Cir. 2000) ("there is no absolute rule in the statute, the regulation, or the case law requiring [contemporaneous clinical evidence or recorded history] before the presumption [of sound condition] may be rebutted, "and post-service physician opinion may constitute requisite clear and convincing evidence); *cf. Vanerson v. West*, 12 Vet.App. 254, 262 (1999) (in examining medical opinion relied on by Board to find condition preexisted service, Court determined an opinion expressing no view as to etiology or date of onset of condition was not clear and unmistakable evidence sufficient to rebut presumption); *Crowe*, 7 Vet.App. at 245-46 (1994) (must apply factors listed in § 3.304(b) in determining whether clear and unmistakable evidence demonstrates that injury or disease existed prior to service).

As to the argument regarding the equivocality of Dr. Lawson's opinion, the Secretary acknowledges in his brief that "the standard of proof for rebutting the presumption of soundness is not merely evidence that is cogent and compelling, i.e., a sufficient showing, but evidence that is clear and unmistakable." Secretary's Brief at 16. The Secretary further acknowledges that "the question is not whether the Secretary has sustained a burden of producing evidence, but whether the evidence as a whole, clearly and unmistakably demonstrates that the injury or disease existed prior to service." *Id.*; *see Vanerson*, 12 Vet.App. at 260-61.

A review of Doctor Lawson's opinion indicates that he is aware of nuances in language. Dr. Lawson's use of the wording "the [appellant] was clearly hypogonadal" and "there was compelling evidence that [the appellant] was also growth hormone deficient," R. at 712 , suggests that there was no doubt in his mind that the two diseases for which the appellant seeks service connection were present during service. In addition, Dr. Lawson's use of the wording, "It is my own opinion that the [appellant's] problems would not have been aggravated by his active duty," R. at 716, also suggests that there was no doubt in Dr. Lawson's view that there was no aggravation of the appellant's conditions during service. However, in opining on whether the appellant's conditions preexisted service, he utilized the terminology "*may have* preexisted" and "*support the likelihood* that this condition existed prior to" service. R. at 715, 716 (emphasis added). Although the two terms in combination may support a conclusion that it is more likely than not that the appellant's diseases preexisted service, the Court is not prepared to state at this juncture whether those statements reached the higher requisite standard of clear and unmistakable evidence. Rather, the Court believes it was premature, based on this report and given the closeness of this question, for the Board to adjudicate the matter of the rebuttal of the presumption of soundness without seeking, pursuant to the duty to assist, *see* 38 U.S.C. § 5107(a), clarification from Dr. Lawson as to the degree of likelihood of preexistence, or seeking other medical opinions on this subject.

Last, the appellant argues that, pursuant to section 1111, the burden is on the Government, at least where there has not been a noting of "defects, infirmities, and disorders . . . at the time of examination, acceptance and enrollment" with respect to service, *see* 38 U.S.C. § 1111, to show by clear and unmistakable evidence that there has not been any aggravation of the appellant's conditions during service. Although the Court has not directly ruled on this argument, the detailed analysis as to the process for determining aggravation set forth in *Maxson v. West*, 12 Vet.App. 453 (1999), clearly suggests the contrary. *See Maxson*, 12 Vet.App. at 459-60 (burden on the appellant to show well-grounded claim based on aggravation in service of preexisting disease or injury, including evidence of permanent increase of disability). However, given the result above, the Court need not further address the appellant's contention at this time.

For the reasons discussed above, the Board's December 10, 1998, decision, insofar as it pertains to the appellant's claims for service connection for hypogonadism and growth hormone

5

deficiency, is VACATED and that matter REMANDED for further proceedings consistent with this decision. The Board's decision is otherwise DISMISSED in part and AFFIRMED in part.