Citation Nr: 1111576 
Decision Date: 03/23/11 Archive Date: 04/05/11

DOCKET NO. 09-05 618 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Jackson, Mississippi


THE ISSUES

1. Entitlement to service connection for an acquired psychiatric disorder. 

2. Entitlement to service connection for a right knee disorder. 


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

Donna D. Ebaugh, Associate Counsel




INTRODUCTION

The Veteran served on active duty from July 1978 to October 1978, from October 2001 to January 2002, August 2002 to September 2002, from October 2002 to April 2003, and from October 2003 to February 2004. She also served during periods of active duty for training (ACDUTRA). 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a March 2008 rating decision of the RO in Jackson, Mississippi.

In January 2011, the Veteran appeared before the undersigned for a videoconference hearing. A transcript of the proceeding is of record. The Board notes that in her formal appeal, she requested a travel board hearing; however, in November 2010, she waived her request for a travel board hearing and opted for the videoconference hearing instead. 

The issue of entitlement to service connection for a right knee disorder is addressed in the REMAND portion of the decision below and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDING OF FACT

The Veteran was diagnosed with an adjustment disorder with depressed mood in service and symptoms of depression have existed from service to the present. 


CONCLUSION OF LAW

An adjustment disorder with depressed mood was incurred in service. 38 U.S.C.A. §§ 1110, 5103(a), 5103A (West 2002 & Supp. 2009); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2010).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist the Appellant

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2009); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2010). Regarding the claim for an acquired psychiatric disorder, the Board is granting in full the benefit sought on appeal. Accordingly, assuming, without deciding, that any error was committed with respect to either the duty to notify or the duty to assist, such error was harmless and need not be further considered. 

Service Connection

Under the relevant laws and regulations, service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1110 (West 2002). If a chronic disease is shown in service, subsequent manifestations of the same chronic disease at any later date, however remote, may be service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b) (2010). However, continuity of symptoms is required where a condition in service is noted but is not, in fact, chronic or where a diagnosis of chronicity may be legitimately questioned. 38 C.F.R. § 3.303(b) (2010).

Further, service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 U.S.C.A. § 1113(b) (West 2002); 38 C.F.R. § 3.303(d) (2010). The Board must determine whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either case, or whether the preponderance of the evidence is against the claim, in which case, service connection must be denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Generally, the evidence must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166 -67 (Fed. Cir. 2004) (citing Hansen v. Principi, 16 Vet. App. 110, 111 (2002); Caluza v. Brown, 7 Vet. App. 498, 505 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996) (table)).

Every person employed in the active military, naval, or air service shall be taken to have been in sound condition when examined, accepted and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service. 38 U.S.C.A. § 1111.

In July 2003, the VA General Counsel issued a precedent opinion holding that to rebut the presumption of soundness in 38 U.S.C.A. § 1111, VA must show, by clear and unmistakable evidence, that the disease or injury existed prior to service and that the disease or injury was not aggravated by service. VAOPGCPREC 3-2003 (July 16, 2003). The claimant is not required to show that the disease or injury increased in severity during service before VA's duty under the second prong of this rebuttal standard attaches. Id; see also Wagner v. Principi, 370 F. 3rd 1089 (Fed. Cir. 2004).

A preexisting injury or disease will be presumed to have been aggravated in service in cases where there was an increase in disability during service. 38 U.S.C.A. § 1153 (West 2002); 38 C.F.R. § 3.306(b) (2010). Clear and unmistakable evidence (obvious or manifest) is required to rebut the presumption of aggravation where the pre-service disability underwent an increase in severity during service. This includes medical facts and principles that may be considered to determine whether the increase is due to the natural progression of the condition.

Aggravation may not be conceded where the disability underwent no increase in severity during service on the basis of all the evidence of record pertaining to the manifestations of the disability prior to, during, and subsequent to service. Id. However, the increase need not be so severe as to warrant compensation. Browder v. Derwinski, 1 Vet. App. 204, 207 (1991).

The U.S. Court of Appeals for Veterans Claims has held that "temporary or intermittent flare-ups of a pre-existing injury or disease are not sufficient to be considered aggravation in service unless the underlying condition, as contrasted to symptoms, is worsened." Crowe v. Brown, 7 Vet. App. 238, 247-48 (1994); Hunt v. Derwinski, 1 Vet. App. 292, 297 (1991).

The record in the present appeal is less than clear as to the onset of the Veteran's diagnosed adjustment disorder with depression. Notably, the first record of the Veteran's depression is contained in a March 2003 Annual Medical Certificate that states, in pertinent part, that she was receiving active treatment for depression, which included her taking an unidentified medication. An April 2003 outpatient treatment record indicated that she was referred from Family Practice with a diagnosis of adjustment disorder with depressed mood. Both records were generated during a period of active service. 

However, in denying the claim for service connection, the RO pointed to a March 2006 VA outpatient treatment record that indicated that the Veteran has taken Prozac following the events on September 11, 2001. The RO found that this report established that the Veteran's depression preexisted her entry into active service in October 2001, and that the subsequent records did not show aggravation. The Board does not agree with this finding. Indeed, the evidence falls far short of establishing that the Veteran's there is clear and unmistakable evidence adjustment disorder and/or depression preexisted her active service. 

First, the Board observes that the March 2006 outpatient record does not indicate when the Veteran started to take Prozac or when the diagnosis of depression was made. The record only states that the Veteran began taking Prozac following the events of September 11, 2001. Next, as the RO has made a formal finding that her service treatment records, other than those contained in the file, are unavailable, a service entrance examination prior to her activation in October 2001 is not available. Therefore, on its face, the presumption of soundness attaches. The presumption of soundness is not rebutted merely by her report to the VA staff physician that she has taken Prozac following the events on September 11, 2001. There are multiple records showing, however, that the symptoms of the Veteran's depression began in 2002. Finally, the Veteran credibly testified that she first experienced symptoms of depression in service. T. 8. 

Having found that the presumption of soundness has not been rebutted, the Board will consider whether service connection is warranted on a direct basis. For the following reasons, the Board finds that service connection is warranted on a direct basis. 

As noted above, service treatment records indicated treatment for acquired psychiatric disorders. Specifically, a March 2003 treatment record indicated prescription drug therapy (Celexa) typically used for mental health disorders. The Veteran was diagnosed with an adjustment disorder with depressed mood in April 2003. This diagnosis was made in conjunction with a letter by a physician stating that there was no reason to extend her active duty commitment for continued medical care. 

Post-service treatment records dated in March and April 2006, as well as May 2008 all indicate diagnoses of a depressive disorder as well as continued prescription drug therapy for an acquired psychiatric disorder. The Board observes that the March 2006 VA outpatient treatment record noted above also indicated that the Veteran reported a history of depression which began in 2002, while on active duty. She reported that she worked in a hostile, stressful work environment.

A December 2006 treatment record indicated that she was taking prescription medication (Prozac) for her depression as well as medication to help her sleep (Ambien). 

The evidence also includes the Veteran's statements and sworn testimony asserting continuity of symptoms since service. She is a licensed social worker and she testified that doing her own clinical work also acts as therapy for herself. T. 11. She also testified that she sees a psychiatrist every six months when she needs prescription refills; and that, as a social worker, she sees another licensed social worker once a week. T. 10, 11. Although the weekly meeting is conducted to fulfill a requirement for her job training, she indicated that the sessions also served as therapy. T. 11. The Board reiterates that lay evidence concerning continuity of symptoms after service, if credible, is ultimately competent. Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). 

The Veteran is competent to report symptoms of feeling depressed and/or anxious because this requires only personal knowledge as it comes to her through his senses. Layno v. Brown, 6 Vet. App. 465, 470 (1994). Moreover, given her stated profession, the Veteran is competent to relate her symptoms to a diagnosis of depression. She has indicated that she had no problems with depression prior to service and has had continual problems with depression and sleeplessness since service. The Board is clearly aware that the Veteran's statements and testimony are self-serving. However, the undersigned found her personal testimony to genuine, credible, and consistent with the evidence of record. See Caluza v. Brown, 7 Vet. App. 498, 511 (1995) ("In the case of oral testimony, a hearing officer may properly consider the demeanor of the witness, the facial plausibility of the testimony, and the consistency of the witness' testimony with other testimony and affidavits submitted on behalf of the [V]eteran."); Jones v. Derwinski, 1 Vet. App. 210, 217 (1991) (finding that "the assessment of the credibility of the veteran's sworn testimony is a function for the BVA in the first instance"). The Board finds that the Veteran's reported history of continued symptomatology since active service, both competent and credible.

Although there are no private or VA nexus opinions regarding the Veteran's claim for an acquired psychiatric disorder, service connection is warranted based on there being sufficient evidence of an initial diagnosis of depression during a period of active service and continuity of symptomatology since service discharge. As such, service connection for an acquired psychiatric disorder is granted. 


ORDER

Service connection for an adjustment disorder with depressed mood is granted. 


REMAND

With regard to the Veteran's claim for service connection for a right knee disorder, a remand is required in this case. Although the Board sincerely regrets the additional delay, it is necessary to ensure that there is a complete record upon which to decide the Veteran's claims so that she is afforded every possible consideration. VA has a duty to make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim for the benefits sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claim. 38 U.S.C.A. § 5103A(a) (West 2002 & Supp. 2010); 38 C.F.R. § 3.159(c), (d) (2010).

In both her written statements and her sworn testimony, the Veteran contends that she injured her right knee in January 2005, while on active duty for training. Unfortunately, as previously noted, service treatment records for that time period are not available. Such have been requested and a formal finding of unavailability has been made by the RO. However, it is not clear as to whether a records search was conducted all of the aliases (iterations of her married name) that she has previously used.

Post-service dependent care treatment records dated in April 2005 indicate several appointments for treatment for the Veteran's right knee pain. In early April 2005, she reported that she had experienced pain behind her right knee for approximately three weeks. At another appointment in April 2005, she reported her right knee giving out on her. It was suspected that she had a meniscal tear. A follow-up in late April 2005 indicated a plan of physical therapy treatment and a profile for six months. Next, a March 2006 MRI indicated a tear of the posteral horn of the medial meniscus with joint effusion. 

While the Board finds the Veteran's statements are an indication that her current symptoms may be a disorder associated with service, there is insufficient competent evidence on file for the VA to make a decision on the claim. To that end, given the competent statements of an injury in service and her current diagnosis of a meniscal tear, the Board finds that a VA examination is required under McLendon v. Nicholson, 20 Vet. App. 79 (2006) to determine whether her current disorder is causally related to active service.

The Veteran must be advised of the importance of reporting to the scheduled VA examination and of the possible adverse consequences, to include denial of her claim, or failing to so report. See 38 C.F.R. § 3.655 (2010).

The Board again notes that a formal finding of unavailability of her service and National Guard treatment records has been made. Notably, the request for those records was made without reference to all of the Veteran's aliases. Another request should be made identifying all of the Veteran's aliases. 

Additionally, any outstanding relevant dependent care treatment records should be obtained. 

Lastly, in order to ensure that all records are available, any outstanding VA outpatient treatment records related to her aforementioned disorder should be obtained. 



(CONTINUED NEXT PAGE)

Accordingly, the case is REMANDED for the following action:

1. Obtain VA clinical records from the VA medical center in Biloxi, Mississippi, for the period from November 2008 to the present. Any negative response should be indicated.

2. Obtain relevant dependent care records located at Keesler Air Force Base, under the sponsor name identified in the file. Any negative response should be indicated.

3. Obtain medical treatment records using all of the identifying aliases listed above, from the Department of Veterans Affairs Service Medical Records Center, P.O. Box 150950, St. Louis, Missouri 63115-8960. Any negative response should be indicated.

4. If evidence of an injury in service or during a period of active duty or inactive duty for training is located, afford the Veteran the appropriate VA examination to determine the nature, extent, onset and etiology of her current right knee disorder. The claims folder should be made available to and reviewed by the examiner and such review should be noted in the examination report. All indicated studies should be performed and all findings should be reported in detail. 

The examiner should render an opinion as to the nature of any current right knee disorder and whether it is at least as likely as not (50 percent probability or greater) that any currently diagnosed right knee disorder had its onset in or within one year of service discharge or is otherwise etiologically related to her active service. 

The rationale for all opinions expressed should be provided in a legible report. If the examiner cannot provide a requested opinion without resorting to mere speculation such should be stated with supporting rationale.

5. The RO/AMC must notify the Veteran that it is his responsibility to report for any scheduled examination and to cooperate in the development of the claims, and that the consequences for failure to report for a VA examination without good cause may include denial of the claims. 38 C.F.R. §§ 3.158, 3.655 (2010). In the event that the Veteran does not report for any scheduled examination, documentation must be obtained which shows that notice scheduling the examination was sent to the last known address. It must also be indicated whether any notice that was sent was returned as undeliverable.

6. Thereafter, the RO should readjudicate the issue on appeal. If any benefit sought remains denied, the Veteran and the representative should be provided with a supplemental statement of the case (SSOC). The SSOC must contain notice of all relevant actions taken on the claim for benefits, to include the applicable law and regulations considered pertinent to the issues, as well as a summary of the evidence received since the issuance of the last SSOC. An appropriate period of time should be allowed for response. 

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2009).



______________________________________________
MICHAEL A. HERMAN
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs