Citation Nr: 1008501 
Decision Date: 03/08/10 Archive Date: 03/17/10

DOCKET NO. 08-06 853 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) in 
Muskogee, Oklahoma


THE ISSUES

1. Entitlement to service connection for an upper 
gastrointestinal (GI) disorder, to include gastroesophageal 
reflux disease (GERD) and/or dyspepsia.

2. Entitlement to service connection for headaches.

3. Entitlement to service connection for insomnia.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

O. Lee, Associate Counsel


INTRODUCTION

The Veteran served on active duty for training (ACDUTRA) from 
March 2004 to September 2004 and on active duty from August 
2005 to December 2006, to include service in Iraq from 
December 2005 to November 2006. He had interim and 
subsequent periods of service in the Army National Guard. 

This matter comes before the Board of Veterans' Appeals 
(Board) on appeal from an August 2007 rating decision of the 
RO in Muskogee, Oklahoma, which denied service connection for 
GERD, headaches and insomnia.

The Veteran testified at a December 2009 videoconference 
hearing before the undersigned Veterans Law Judge. A 
transcript of that proceeding has been associated with the 
claims file. 

The issues of service connection for headaches and insomnia 
are addressed in the REMAND portion of the decision below and 
are REMANDED to the RO via the Appeals Management Center 
(AMC), in Washington, DC.


FINDING OF FACT

The evidence is at least in equipoise that the Veteran's 
upper GI disorder is related to active service.




CONCLUSION OF LAW

Service connection for an upper GI disorder is warranted. 38 
U.S.C.A. §§ 1110, 1111, 1153; 1154(b), 5107 (West 2002); 38 
C.F.R. §§ 3.102, 3.303, 3.304(b), 3.306(a) (2009); Wagner v. 
Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004)


REASONS AND BASES FOR FINDING AND CONCLUSION

The Board has thoroughly reviewed all the evidence in the 
appellant's claims file, and has an obligation to provide 
reasons and bases supporting the decision. See Gonzales v. 
West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must 
review the entire record, but does not have to discuss each 
piece of evidence). The analysis below focuses on the most 
salient and relevant evidence and on what this evidence 
shows, or fails to show, on the claims. The appellant must 
not assume that the Board has overlooked pieces of evidence 
that are not explicitly discussed herein. See Timberlake v. 
Gober, 14 Vet. App. 122 (2000) (the law requires only that 
the Board address its reasons for rejecting evidence 
favorable to the veteran).

The Board must assess the credibility and weight of all 
evidence, including the medical evidence, to determine its 
probative value, accounting for evidence which it finds to be 
persuasive or unpersuasive, and providing reasons for 
rejecting any evidence favorable to the appellant. Equal 
weight is not accorded to each piece of evidence contained in 
the record; every item of evidence does not have the same 
probative value. When all the evidence is assembled, VA is 
responsible for determining whether the evidence supports the 
claim or is in relative equipoise, with the appellant 
prevailing in either event, or whether a preponderance of the 
evidence is against a claim, in which case, the claim is 
denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

I. The Veterans Claims Assistance Act of 2000 (VCAA)

With respect to the Veteran's claim, VA has met all statutory 
and regulatory notice and duty to assist provisions. See 38 
U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 
C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326. In this case, the 
Board is granting in full the benefit sought on appeal. As 
there is no indication that any failure on the part of VA to 
provide additional notice or assistance reasonably affects 
the outcome of this case, the Board finds that any such 
failure is harmless. See Mayfield v. Nicholson, 19 Vet. App. 
103 (2005), rev'd on other grounds, 444 F.3d 1328 (Fed. Cir. 
2006); Kent v. Nicholson, 20 Vet. App. 1 (2006).

II. Service Connection

The Veteran contends that he has GERD as a result of active 
service. 
For the reasons that follow, the Board concludes that service 
connection is warranted.

Service connection may be established for a disability 
resulting from disease or injury incurred in or aggravated by 
active service. See 38 U.S.C.A. § 1110 (West 2002). For the 
showing of chronic disease in service there must be a 
combination of manifestations sufficient to identify the 
disease entity, and sufficient observation to establish 
chronicity at the time. See 38 C.F.R. § 3.303(b). If 
chronicity in service is not established, a showing of 
continuity of symptoms after discharge is required to support 
the claim. Id. Service connection may be granted for any 
disease diagnosed after discharge, when all of the evidence 
establishes that the disease was incurred in service. See 
38 C.F.R. § 3.303(d).

A veteran is presumed to have been in sound condition when 
examined, accepted, and enrolled for service, except as to 
defects, infirmities, or disorders noted at the time of the 
examination, acceptance, and enrollment, or where clear and 
unmistakable evidence demonstrates that the injury or disease 
existed before acceptance and enrollment and was not 
aggravated by such service. 38 U.S.C.A. § 1111; 38 C.F.R. 
§ 3.304(b). Only such conditions as are recorded in 
examination reports are to be considered as noted. 38 
U.S.C.A. § 1111; 38 C.F.R. § 3.304(b). The presumption of 
soundness, however, attaches only where there has been an 
induction medical examination during which the disability 
about which the veteran later complains was not detected. 
See Bagby v. Derwinski, 1 Vet. App. 225, 227 (1991). History 
provided by the veteran of the preservice existence of 
conditions recorded at the time of the entrance examination 
does not, in itself, constitute a notation of a preexisting 
condition. 38 C.F.R. § 3.304(b)(1); Paulson v. Brown, 7 Vet. 
App. 466, 470 (1995); Crowe v. Brown, 7 Vet. App. 238, 246 
(1995). To rebut the presumption of sound condition for 
disorders not noted on the entrance examination report, VA 
must show by clear and unmistakable evidence that the 
disability existed prior to service and was not aggravated by 
service. 38 U.S.C.A. § 1111; VAOPGCPREC 3-2003. The 
claimant is not required to show that the disease or injury 
increased in severity during service before VA's duty under 
the second prong of this rebuttal standard attaches.

A preexisting injury or disease will be considered to have 
been aggravated by active service where there is an increase 
in disability during such service, unless there is a specific 
finding that the increase in disability is due to the natural 
progress of the disease. 38 U.S.C.A. § 1153; 38 C.F.R. 
§ 3.306(a); Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. 
Cir. 2004). Clear and unmistakable evidence (obvious or 
manifest) is required to rebut the presumption of aggravation 
where the pre-service disability underwent an increase in 
severity. 38 C.F.R. § 3.306(b). This includes medical facts 
and principles that may be considered to determine whether 
the increase is due to the natural progress of the condition. 
Id. Aggravation may not be conceded where the disability 
underwent no increase in severity during service on the basis 
of all the evidence of record pertaining to the 
manifestations of the disability prior to, during and 
subsequent to service. 38 C.F.R. § 3.306(b). The usual 
effects of medical and surgical treatment in service, having 
the effect of ameliorating disease or other conditions 
incurred before enlistment, will not be considered service 
connected unless the disease or injury is otherwise 
aggravated by service. 38 C.F.R. § 3.306(b)(1). 

Active military, naval, or air service includes any period of 
active duty for training (ACDUTRA) during which the 
individual concerned was disabled or died from a disease or 
injury incurred in or aggravated in line of duty, or any 
period of inactive duty training (INACDUTRA) during which the 
individual concerned was disabled or died from injury 
incurred in or aggravated in line of duty. 38 U.S.C.A. 
§ 101(21) and (24) (West 2002); 38 C.F.R. § 3.6(a) and (d). 
ACDUTRA includes full-time duty performed for training 
purposes by members of the National Guard of any state, 
pursuant to 32 U.S.C.A. §§ 316, 502, 503, 504, or 505. 
38 U.S.C.A. § 101(22); 38 C.F.R. § 3.6(c)(3). Thus, service 
connection may be granted for disability resulting from 
disease or injury incurred or aggravated while performing 
ACDUTRA, or from an injury incurred or aggravated while 
performing INACDUTRA. 38 U.S.C.A. §§ 101(24), 106. However, 
presumptive provisions such as 38 C.F.R. §§ 3.307, 3.309 
(presumption of service incurrence), 3.306 (presumption of 
aggravation), and 38 U.S.C.A. §§ 1111, 1131 (presumption of 
soundness) do not apply to ACDUTRA or INACDUTRA. Biggins v. 
Derwinski, 1 Vet. App. 474, 477-78 (1991). 

In order to establish service connection for the claimed 
disorder, there generally must be (1) medical evidence of a 
current disability; (2) medical, or in certain circumstances, 
lay evidence of in-service incurrence or aggravation of a 
disease or injury; and (3) medical evidence of a nexus 
between the claimed in-service disease or injury and the 
current disability. See Hickson v. West, 12 Vet. App. 247, 
253 (1999).

Lay evidence of service incurrence of injury or disease, if 
consistent with the circumstances, conditions, or hardships 
of such service, will be accepted as sufficient proof of 
service connection of any disease or injury alleged to have 
been incurred in such service in the case of any veteran who 
engaged in combat with the enemy in active service with a 
military, naval, or air organization of the United States 
during a period of war. 38 U.S.C.A. § 1154(b) (West 2002); 
see also 38 C.F.R. § 3.304(b); Collette v. Brown, 82 F.3d 389 
(Fed. Cir. 1996). Every reasonable doubt in these service 
connection cases will be resolved in favor of the veteran, 
and may only be rebutted by clear and convincing evidence. 38 
U.S.C.A. § 1154(b).

Medical evidence is generally required to establish a medical 
diagnosis or to address questions of medical causation; lay 
assertions of medical status do not constitute competent 
medical evidence for these purposes. Espiritu v. Derwinski, 
2 Vet. App. 492, 494 (1992). However, lay assertions may 
serve to support a claim for service connection by supporting 
the occurrence of lay-observable events or the presence of 
disability or symptoms of disability subject to lay 
observation. 38 U.S.C.A. § 1153(a); 38 C.F.R. § 3.303(a); 
Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see 
Buchanan v. Nicholson, 451 F. 3d 1331, 1336 (Fed. Cir. 2006) 
(addressing lay evidence as potentially competent to support 
presence of disability even where not corroborated by 
contemporaneous medical evidence). Competency must be 
distinguished from weight and credibility, which are factual 
determinations going to the probative value of the evidence. 
Rucker v. Brown, 10 Vet. App. 67, 74 (1997).

The Veteran states that he first experienced a mild case of 
acid reflux in 2004 during basic training; he reported to 
sick hall and was given antacid tablets. Thereafter, he took 
over the counter medicine as needed. The Veteran contends 
that this condition has gradually worsened. He reports that 
during his deployment, he found it necessary to take a pill 
almost daily. He now takes double the daily dose of the 
Prilosec prescribed by VA and resorts to taking over the 
counter medicine when his prescription runs out. See 
videoconference hearing transcript, December 2009. 

A December 2003 enlistment examination report for the 
National Guard is negative for any GI problems. At the time, 
the Veteran denied a history of frequent indigestion or 
heartburn. Service treatment records are silent concerning 
any complaints, treatment or a diagnosis of GERD or other 
related problems during basic training. A July 2005 annual 
medical certificate reflects that the Veteran had acid reflux 
controlled with medication. Likewise, a December 2005 
medical assessment report, prior to deployment, shows that 
the Veteran had "reflux - GERD." Post-deployment health 
assessment reports dated in November 2006 and December 2006 
indicate that the Veteran experienced frequent indigestion 
during the deployment and continued to have this problem 
thereafter. 

At his December 2009 videoconference hearing, the Veteran 
testified not only that the onset of his upper GI problems 
occurred during his period of ACDUTRA, but also that he 
continued to experience upper GI symptoms during his 
deployment in Iraq and since his discharge from active 
service. In this regard, the Board notes that the Veteran is 
competent to attest to factual matters of which he has first-
hand knowledge. See Washington v. Nicholson, 19 Vet. App. 
362, 368 (2005); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. 
Cir. 2007). In addition, Board finds the Veteran's lay 
statements to be credible as to in-service incurrence and 
continuity of symptomatology, as they are consistent with 
evidence of record and the circumstances of his service. See 
Buchanan, 451 F. 3d at 1336; Caluza v. Brown, 7 Vet. App. 
498, 510-511 (1995) (Credibility can be generally evaluated 
by a showing of interest, bias, or inconsistent statements, 
and the demeanor of the witness, facial plausibility of the 
testimony, and the consistency of the witness testimony.). 
For this reason, the Board concludes that the Veteran has 
provided credible evidence that his upper GI problems began 
in service and that he has had such symptoms continuously 
since service. 

The Board further finds that there is evidence of a current 
disability. VA treatment records reflect treatment for GERD 
and a current diagnosis of dyspepsia. Treatment notes dated 
in March 2007 indicate that the Veteran had tried a variety 
of medications and that Prilosec was the only one that seemed 
to be effective. It was also noted that the Veteran was 
experiencing dyspepsia despite taking GERD type medications. 
As noted above, the Veteran testified at the December 2009 
hearing that he finds it necessary to take double the 
prescribed dose of Prilosec to treat his current symptoms. 
The Board finds the Veteran's lay statements regarding 
current symptomatology to be credible. See Buchanan, 451 F. 
3d at 1336. 

The Veteran was afforded a VA general medical examination in 
June 2007. The examination report includes a summary of the 
Veteran's relevant medical history and indicates that he is 
taking Prilosec for his acid reflux condition. Following a 
physical examination and a review of a March 2007 upper GI 
air contrast study, the examiner diagnosed the Veteran with a 
history of acid reflux with a normal examination and normal 
upper GI. Despite the normal June 2007 VA examination, the 
Board finds that the evidence is at least in equipoise that 
that the Veteran has a current disability given his 
consistent complaints of chronic symptoms of acid reflux 
which require medication treatment and given the fact that VA 
treatment records reflect a current diagnosis of dyspepsia. 
Taking into account all of the relevant evidence of record, 
the evidence shows that the Veteran has a current upper GI 
disorder that was incurred during active service. 

As such, the Board concludes that the evidence is at least 
evenly balanced as to whether the Veteran's upper GI 
disorder, to include GERD and/or dyspepsia, is related to 
active service, and therefore, service connection is 
warranted. The benefit-of-the-doubt rule has been applied in 
reaching this decision. See 38 U.S.C.A. § 5107(b) (West 
2002); see Ortiz v. Principi, 274 F.3d 1361 (Fed. Cir. 2001); 
Gilbert, supra.


ORDER

Entitlement to service connection for an upper GI disorder is 
granted.


REMAND

The Veteran contends that he has headaches and insomnia as a 
result of his combat service in Iraq, which involved exposure 
to improvised explosive devices (IEDs). As noted above, the 
Veteran served in Iraq from December 2005 to November 2006. 
The provisions of 38 C.F.R. § 3.317 are therefore potentially 
applicable in this case. Under 38 C.F.R. § 3.317, service 
connection may be established for a chronic disability 
resulting from an undiagnosed illness which became manifest 
either during active service in the Southwest Asia theater of 
operations during the Persian Gulf War or to a degree of 10 
percent or more not later than December 31, 2011; and by 
history, physical examination, and laboratory tests cannot be 
attributed to any known clinical diagnosis. 38 U.S.C.A. § 
1117; 38 C.F.R. § 3.317. Signs or symptoms which may be 
manifestations of an undiagnosed illness or medically 
unexplained chronic multisymptom illness include, but are not 
limited to, headache and sleep disturbances. 38 C.F.R. § 
3.317(b). 

The record reflects that the Veteran was afforded a VA 
general medical examination in June 2007. This examination, 
however, did not address the onset and etiology of the 
Veteran's claimed headaches and insomnia, to include any 
possible relationship to his combat service in Iraq. 
Additionally, while the Veteran is service-connected for a 
scar on the posterior head as residuals of head trauma, there 
is no discussion as to whether his headaches could be related 
to his in-service head trauma, which resulted in a head 
laceration. Moreover, the Veteran testified at his December 
2009 videoconference hearing that the medication that VA had 
prescribed for his sleep problems was one that was also used 
for anxiety. In this regard, it is noted that the Veteran 
was diagnosed with an anxiety disorder at a June 2007 PTSD 
examination. The general medical examination did not 
consider whether the Veteran's insomnia could be a symptom of 
his currently diagnosed anxiety. See Clemons v. Shinseki, 23 
Vet. App. 1 (2009). Based on the foregoing, the Board finds 
the June 2007 examination to be inadequate upon which to base 
a decision here. See McLendon v. Nicholson, 20 Vet. App. 79 
(2006). Furthermore, there is no indication that the Veteran 
has ever been afforded a Persian Gulf Registry Examination to 
assess any impact that his exposure to IED blasts may have on 
his currently claimed disabilities. As such, this case must 
be remanded for a new examination, specifically a Persian 
Gulf Registry Examination, to assess the current nature and 
etiology of the Veteran's claimed conditions and to determine 
whether he has a chronic disability resulting from an 
undiagnosed illness or combination of undiagnosed illnesses. 

The Board further notes that the Veteran has not been 
provided with notice of how to establish entitlement to 
service connection for a disability due to an undiagnosed 
illness or a medically unexplained chronic multisymptom 
illness pursuant to 38 C.F.R. § 3.317. See 38 U.S.C.A. § 
5103(a) (West 2002); 38 C.F.R. § 3.159(b); Quartuccio v. 
Principi, 16 Vet. App. 183 (2002) (When VA receives a 
complete or substantially complete application for benefits, 
it is required to notify the claimant and his representative, 
if any, of any information and medical or lay evidence that 
is necessary to substantiate the claim.); see also Pelegrini 
v. Principi, 18 Vet. App. 112, 120-21 (2004). As this case 
is being remanded for other matters, the AOJ should take the 
opportunity to correct the aforementioned defect in the VCAA 
notice previously provided to the Veteran.

Accordingly, the case is REMANDED for the following action:

1. The Agency of Original Jurisdiction 
(AOJ) should send the Veteran a 
corrective VCAA notice under 38 U.S.C.A. 
§ 5103(a) and 38 C.F.R. § 3.159(b) that 
includes information about how to 
establish entitlement to service 
connection for a disability due to an 
undiagnosed illness or a medically 
unexplained chronic multisymptom illness 
under 38 C.F.R. § 3.317.

2. The AOJ should also schedule the 
Veteran for a Persian Gulf War Registry 
examination to assess the current nature 
and etiology of his claimed headaches and 
insomnia, to include any related anxiety 
disorder. The entire claims folder and a 
copy of this REMAND must be made 
available to the examiner prior to the 
examination, and the examiner should note 
that the claims file has been reviewed. 

After reviewing the file and performing 
any necessary tests, the examiner should 
list any current disorders related to the 
Veteran's complaints of headaches and 
insomnia, as well as any associated 
anxiety disorder. The examiner should 
render an opinion as to the following: 
(a) for each currently diagnosed 
disorder, whether it is at least as 
likely as not (i.e., to at least a 50:50 
degree of probability) that the disorder 
is related to active service, to include 
exposure to IED blasts in Iraq and as 
residuals of in-service head trauma, or 
whether such a relationship is unlikely 
(i.e., less than a 50:50 degree of 
probability); (b) for any currently 
diagnosed sleep disorder (e.g., 
insomnia), whether such a condition is a 
symptom of the Veteran's anxiety 
disorder, which began in service; (c) 
whether the Veteran has objective 
indications of a chronic disability 
manifested by headaches, sleep 
disturbances (e.g., insomnia) and/or 
neuropsychological signs or symptoms 
(e.g., anxiety) which are signs and 
symptoms of an undiagnosed illness, that 
by history, physical examination, and 
laboratory tests cannot be attributed to 
any known clinical diagnosis; and (d) 
whether the Veteran has objective 
indications of a medically unexplained 
chronic multisymptom illness that is 
defined by a cluster of signs or 
symptoms. For this purpose, a "chronic 
disability" is defined as a disability 
that has existed for six months or more.

The examiner should provide a complete 
rationale for any opinion provided.

3. Thereafter, the AOJ should 
readjudicate the claims of service 
connection for headaches and insomnia, to 
include any related anxiety disorder. In 
doing so, the AOJ should consider whether 
service connection for the Veteran's 
claimed symptoms of headaches and 
insomnia may be warranted as a qualifying 
chronic disability under 38 C.F.R. § 
3.317. All new evidence received since 
the issuance of the February 2008 SOC 
should be considered. If the benefits 
sought on appeal are not granted, the 
Veteran and his representative should be 
furnished an SSOC and afforded a 
reasonable opportunity to respond before 
the record is returned to the Board for 
further review.

The appellant has the right to submit additional evidence and 
argument on the matter or matters the Board has remanded. 
Kutscherousky v. West, 12 Vet. App. 369 (1999).

No action is required of the appellant until further notice. 
However, the Board takes this opportunity to advise the 
appellant that the conduct of the efforts as directed in this 
remand, as well as any other development deemed necessary, is 
needed for a comprehensive and correct adjudication of his 
claims. His cooperation in VA's efforts to develop his 
claim, including reporting for any scheduled VA examination, 
is both critical and appreciated. The appellant is also 
advised that failure to report for any scheduled examination 
may result in the denial of a claim. 38 C.F.R. § 3.655.

This claim must be afforded expeditious treatment. The law 
requires that all claims that are remanded by the Board of 
Veterans' Appeals or by the United States Court of Appeals 
for Veterans Claims for additional development or other 
appropriate action must be handled in an expeditious manner. 
See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2009).



______________________________________________
K. PARAKKAL
Veterans Law Judge, Board of Veterans' Appeals



 Department of Veterans Affairs