Citation Nr: 1542424 
Decision Date: 09/30/15 Archive Date: 10/05/15

DOCKET NO. 11-00 257A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in North Little Rock, Arkansas


THE ISSUE

Entitlement to service connection for hypertension.


ATTORNEY FOR THE BOARD

M. McPhaull, Counsel



INTRODUCTION

The Veteran served on active duty from August 1974 to August 1978, and from January 1991 to June 1991. He also has periods of active and inactive duty training with the Arkansas and Washington State National Guards. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2009 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in North Little Rock, Arkansas. 

Per his request, the Veteran was scheduled for a Board hearing before a Veterans Law Judge sitting at the RO in February 2013. He was advised of the scheduled hearing in a January 2013 letter; however, he failed to appear for such hearing. Therefore, the Board considers his hearing request to be withdrawn. 38 C.F.R. § 20.704(d) (2015). 

This matter, along with the issue of entitlement to service connection for diabetes mellitus, type 2, was previously before the Board in December 2013, at which time it was remanded for further development. The matters were again before the Board in July 2014 when they were remanded for further development, to include exhausting all efforts in obtaining the Veteran's treatment records from his National Guard duty, and to obtain addendum opinions. In a June 2015 rating decision, the Agency of Original Jurisdiction (AOJ) granted service connection claim for diabetes. As the benefit sought on appeal with respect to such issue has been granted, this issue is no longer before the Board.

In July 2015, the Veteran submitted additional evidence with regard to the continued denial of his hypertension claim. The evidence includes a statement from him as well as information from the internet pertaining to hypertension. The evidence was submitted without a waiver of consideration by the AOJ. To the extent that this evidence consists of the definition of hypertension and a statement from the Veteran repeating his assertions as to why service connection is warranted, it is essentially duplicative in nature and, thus, irrelevant. Accordingly, a remand of the claim for initial AOJ consideration is not required. 38 C.F.R. § 20.1304(c). 

Finally, the Board notes that this appeal was processed using the Virtual VA and Veterans Benefits Management System (VBMS) paperless claims processing systems. 


FINDING OF FACT

Hypertension is not related to any disease, injury, or incident during active duty, did not manifest within one year of discharge from active duty, and was not incurred or aggravated during a period of active duty for training (ACDUTRA).


CONCLUSION OF LAW

The criteria for service connection for hypertension have not been met. 38 U.S.C.A. §§ 101(24), 1101, 1110, 1112, 1131, 1137, 1153, 5107 (West 2014); 38 C.F.R. §§ 3.1(d), 3.6(a), 3.102, 3.303, 3.304, 3.306, 3.307, 3.309 (2015).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Due Process Considerations

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). Proper notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1). 

In Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), the United States Court of Appeals for Veterans Claims (Court) held that the notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) Veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. 

In Pelegrini v. Principi, 18 Vet. App. 112 (2004), the Court held that a VCAA notice, as required by 38 U.S.C.A. § 5103(a), must be provided to a claimant before the initial unfavorable AOJ decision on the claim for VA benefits. 

In the instant case, the Board finds that VA has satisfied its duty to notify under the VCAA. Specifically, a January 2009 letter, sent prior to the initial unfavorable decision issued in May 2009 advised the Veteran of the evidence and information necessary to substantiate his service connection claim, as well as his and VA's respective responsibilities in obtaining such evidence and information. Additionally, such letter advised him of the information and evidence necessary to establish a disability rating and an effective date in accordance with Dingess/Hartman, supra. 

Relevant to the duty to assist, all available treatment records, to include the Veteran's service treatment records, VA outpatient treatment records, private treatment records, to include from Betton Clinic, Ortho Arkansas, and Baptist Health Medical Center, the results of a VA examination in February 2014, and VA opinions in February 2014, October 2014, and June 2015 have been obtained and considered. The Veteran has not identified any additional, outstanding records that have not been requested or obtained. 

The Veteran was also afforded a VA examination in February 2014 with respect to the service connection issue decided herein. However, in the July 2014 remand, the Board determined that the etiological opinion offered in conjunction with such examination was inadequate or incomplete for adjudication purposes. Specifically, the Board found that the opinion was rendered prior to any actual verification of the Veteran's ACDUTRA dates of service, and further, the opinion was entirely lacking in sound rationale. As such, the Board remanded the case in order to first verify the Veteran's National Guard service dates and then obtain an addendum opinion, which was offered in October 2014. A second addendum opinion was provided in June 2015. The Board finds that the February 2014 VA examination in combination with the October 2014 and June 2015 addendum opinions are adequate to decide the issue as they are predicated on an interview with the Veteran; a review of the entire record, to include his service treatment records; and a physical examination with diagnostic testing. The opinions proffered considered all of the pertinent evidence of record, to include the statements of the Veteran, and provided a complete rationale, relying on and citing to the records reviewed. Moreover, the examiner offered clear conclusions with supporting data as well as reasoned medical explanations connecting the two. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[A]medical opinion ... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions"). Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination and opinion regarding the issues decided herein has been met.

As noted previously, the Board remanded this case in December 2013 and February 2014. In December 2013, the Board remanded the matter in order to verify the Veteran's periods of active duty, ACDUTRA, and inactive duty training (INACDUTRA); obtain any outstanding VA and private treatment records, and afford the Veteran a VA examination so as to determine the nature and etiology of his hypertension. Thereafter, the AOJ attempted to verify the Veteran's periods of service, obtained all outstanding service personnel and treatment records, requested the Veteran identify any outstanding records; and afforded him a VA examination and opinion in February 2014.

The Board subsequently remanded the case in February 2014 as the AOJ had not substantially complied with the prior remand order to verify all dates of the Veteran's National Guard service, to include dates and periods of ACDUTRA and INACDUTRA. Specifically, the Board directed the AOJ to contact any appropriate sources, to include the National Personnel Records Center (NPRC), Records Management Center (RMC), the Arkansas Army Reserves, and the Washington National Guard, to verify all of the Veteran's periods of ACDUTRA and INACDUTRA in the Washington and Arkansas National Guards from approximately March 1986 to August 1991, and 1993 to 2002, respectively, and to obtain any associated service personnel or treatment records not already of record. If after reasonable attempts the records could not be located, the AOJ was directed to issue a formal determination that such records do not exist or that further efforts to obtain such records would be futile, and that such should be documented in the claims file. The Veteran was also to be notified of the attempts made and why further attempts would be futile. The AOJ was also directed to obtain an addendum opinion from the February 2014 VA examiner regarding the etiology of the Veteran's hypertension. 

In July 2014 letters, the AOJ requested verification of service dates from the Arkansas and Washington National Guard. In an August 2014 response, the Military Department of Arkansas, Office of the Adjutant General, responded that it does not have the Veteran in its records. Further, the Arkansas Air Guard was contacted and the response was "no records found". The AOJ was informed that the request was being faxed to NPRC. The Board observes that correspondence from NPRC indicates that the Veteran's records have been charged out to VA. In September 2014, the AOJ sent a second request for records to both the Arkansas and Washington National Guard. A September 2014 letter was also sent to the Veteran informing him that requests for his records had been made to both the Washington and Arkansas National Guard. 

In a September 2014 letter, the Washington National Guard indicated that there were no records for the Veteran at that facility; however, the AOJ might be able to obtain any records by contacting the Army Reserves. September 2014 and December 2014 letters were subsequently forwarded to the Army Reserves. In December 2014, the Army Reserves provided several additional records, to include a Statement of Military Service that documented all of the Veteran's periods of service, to include INACDUTRA and ACDUTRA. Finally, in June 2015 correspondence, the Washington Military Department indicated that an extensive search of the entire facility was conducted, which included utilization and reviewing all automated tracking and registration mechanisms, and determined that no records for the Veteran were at that facility.

While the AOJ did not explicitly inform the Veteran that there were not all additional records were found, or make a formal finding and place such in the claims file, the Board observes that, in the recent June 2015 supplemental statement of the case, the AOJ lists the detailed steps it took in order to obtain all additional records, and noted all of the negative responses. The Board finds that VA has conducted a diligent and complete search for any and all additional National Guard service records, and it appears as if some of the records are not available. Further, in a July 2015 letter subsequent to the June 2015 supplemental statement of the case, the Veteran does not indicate any additional outstanding records are missing. Finally, an adequate addendum opinion was obtained. 

Therefore, the Board finds that the AOJ has substantially complied with the December 2013 and July 2014 remand directives such that no further action is necessary in this regard. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002). 

Thus, the Board finds that VA has fully satisfied the duty to assist. In the circumstances of this case, additional efforts to assist or notify the Veteran in accordance with the VCAA would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991) (strict adherence to requirements of the law does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case; such adherence would result in unnecessarily imposing additional burdens on VA with no benefit flowing to the Veteran); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the Veteran are to be avoided). VA has satisfied its duty to inform and assist the Veteran at every stage in this case, at least insofar as any errors committed were not harmful to the essential fairness of the proceeding. Therefore, the Veteran will not be prejudiced as a result of the Board proceeding to the merits of his claim.


II. Analysis

A Veteran is a person who served in the active military, naval, or air service and who was discharged or released under conditions other "than dishonorable." 38 C.F.R. § 3.1(d). The term "active military, naval, or air service" includes: (1) active duty; (2) any period of ACDUTRA during which the individual concerned was disabled or died from a disease or injury incurred or aggravated in the line of duty; and (3) any period of INACDUTRA during which the individual concerned was disabled or died from an injury incurred or aggravated in the line of duty. 38 U.S.C.A. § 101(24); 38 C.F.R. §§ 3.1(d), 3.6(a). 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. Id; see also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff'd, 78 F.3d 604 (Fed. Cir. 1996) [(table)].

Additionally, for Veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, such as cardiovascular-renal disease including hypertension, are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C.A. §§ 1101, 1112, 1137; 38 C.F.R. §§ 3.307, 3.309. 

Alternatively, service connection may be established under 38 C.F.R. § 3.303(b) by (a) evidence of (i) the existence of a chronic disease in service or during an applicable presumption period under 38 C.F.R. § 3.307 and (ii) present manifestations of the same chronic disease, or (b) when a chronic disease is not present during service, evidence of continuity of symptomatology. The use of continuity of symptoms to establish service connection is applicable in this case as sensorineural hearing loss is deemed an organic disease of the nervous system under 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

A Veteran is considered to have been in sound condition when examined, accepted and enrolled for service, except as to defects, infirmities, or disorders noted at entrance into service, or where clear and unmistakable (obvious or manifest) evidence demonstrates that an injury or disease existed prior thereto and was not aggravated by such service. 38 U.S.C.A. § 1111; 38 C.F.R. § 3.304(b). This presumption attaches only where there has been an induction examination in which the later complained-of disability was not detected. See Bagby v. Derwinski, 1 Vet. App. 225, 227 (1991). Only such conditions as are recorded in examination reports are considered as noted. 38 C.F.R. § 3.304(b). History of pre-service existence of conditions recorded at the time of examination does not constitute a notation of such conditions but will be considered together with all other material evidence in determinations as to inception. 38 C.F.R. § 3.304(b) (1).

VA's General Counsel has held that to rebut the presumption of sound condition under 38 U.S.C. § 1111, VA must show by clear and unmistakable evidence both that the disease or injury existed prior to service and that the disease or injury was not aggravated by service. The claimant is not required to show that the disease or injury increased in severity during service before VA's duty under the second prong of this rebuttal standard attaches. VAOPGCPREC 03-2003; see also Wagner v. Principi, 370 F.3d 1089 (Fed. Cir. 2004).

In deciding a claim based on aggravation, after having determined the presence of a pre-existing condition, the Board must first determine whether there has been any measured worsening of the disability during service and then whether this constitutes an increase in disability. See Browder v. Brown, 5 Vet. App. 268, 271 (1993); Hensley v. Brown, 5 Vet. App. 155, 163 (1993). A pre-existing injury or disease will be considered to have been aggravated by active service where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease. Aggravation may not be conceded where the disability underwent no increase in severity during service on the basis of all the evidence of record pertaining to the manifestations of the disability prior to, during, and subsequent to service. 38 U.S.C.A. 1153; 38 C.F.R. 3.306.

Temporary or intermittent flare-ups of the pre-existing condition during service are not sufficient to be considered aggravation unless the underlying condition, as contrasted to symptoms, has worsened. Crowe v. Brown, 7 Vet. App. 238, 247- 48 (1994); Hunt v. Derwinski, 1 Vet. App. 292, 296-97 (1991). Accordingly, "a lasting worsening of the condition" - that is, a worsening that existed not only at the time of separation but one that still exists currently - is required. See Routen v. Brown, 10 Vet. App. 183, 189 n. 2 (1997); see also Verdon v. Brown, 8 Vet. App. 529, 538 (1996).

Certain evidentiary presumptions, such as the one already alluded to regarding the presumption of sound condition when entering service, but also the presumption of aggravation during service of pre-existing diseases or injuries that undergo an increase in severity during service, and the presumption of service incurrence for certain diseases such as hypertension that manifest to a degree of disability of 10 percent or more within a specified time after separation from service, generally one year, are provided by law to assist Veterans in establishing their entitlement to service connection for a disability or disabilities. 38 U.S.C.A. § 1112; 38 C.F.R. 
§ 3.304(b), 3.306, 3.307, 3.309(a). Notably, however, the advantages of these evidentiary presumptions do not extend to those who claim service connection based on a period of ACDUTRA or INACDUTRA. Paulson v. Brown, 7 Vet. App. 466, 470-71 (1995) (noting that the Board did not err in not applying presumptions of sound condition and aggravation to appellant's claim where he served only on ACDUTRA).

For the purposes of establishing service connection, VA employs the definition provided in the rating criteria in 38 C.F.R. § 4.104 Diagnostic Code 7101, Note 1. This regulation defines the term hypertension as meaning that the diastolic blood pressure is predominantly 90 mmHg or greater. Isolated systolic hypertension means that the systolic blood pressure is predominantly 160mmHg or greater with a diastolic blood pressure of less than 90mmHg. 38 C.F.R. § 4.104 Diagnostic Code 7101, Note 1. VA does not recognize "pre-hypertension" as a disability for service connection purposes. 

Lay evidence is competent to establish the presence of observable symptomatology and "may provide sufficient support for a claim of service connection." Layno v. Brown, 6 Vet. App. 465, 469 (1994). When a condition is capable of lay observation and may be diagnosed by its unique and readily identifiable features, the presence of the disorder is not a determination "medical in nature." 

Lay evidence can be competent and sufficient to establish a diagnosis when a layperson (1) is competent to identify the medical condition; or, (2) is reporting a contemporaneous medical diagnosis; or, (3) describes symptoms at the time which supports a later diagnosis by a medical professional. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). Although a lay person is competent in certain situations to provide a diagnosis of a simple condition, a lay person is not competent to provide evidence as to more complex medical questions. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007). Likewise, mere conclusory or generalized lay statements that a service event or illness caused a current disability are insufficient. Waters v. Shinseki, 601 F.3d 1274, 1278 (2010). 

The Board must weigh any competent lay evidence and to make a credibility determination as to whether it supports a finding of service incurrence; or, if applicable, continuity of symptomatology; or both, sufficient to establish service connection. See Barr v. Nicholson, 21 Vet. App. 303 (2007); see also Layno v. Brown, 6 Vet. App. 465 (1994). The credibility of lay evidence may not be refuted solely by the absence of corroborating contemporaneous medical evidence, but it is a factor. Davidson v. Shinseki, 581 F.3d at 1313, 1316 (Fed.Cir. 2009). Other credibility factors are the lapse of time in recollecting events attested to, prior conflicting statements as opposed to consistency with other statements and evidence, internal consistency, facial plausibility, bias, interest, the length of time between alleged incurrence of disability and the earliest or first corroborating medical or lay evidence thereof, and statements given during treatment (which are usually given greater probative weight, particularly if close in time to the onset thereof).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

As an initial matter, the record reflects that the Veteran has a current diagnosis of hypertension, to include as shown in records of private medical care starting in January 1996. The Veteran submitted his service connection claim in May 2008 and indicated that his hypertension began in 1996.

The Veteran's service treatment records from active duty and National Guard include several blood pressure readings. Specifically, upon entry into service, an August 1974 enlistment examination showed a blood pressure reading of 118/70. Separation examination for this period of service showed a blood pressure reading of 128/68 (August 1978). On a March 1990 service examination, blood pressure reading was 128/84. A May 1991 separation examination from the Veteran's second period of active duty showed a blood pressure reading of 144/94. At such time, the examiner noted that the Veteran's blood pressure was increased and follow up was recommended. A May 1997 civilian examination showed blood pressure readings of 150/108 in the right arm and 150/110 in the left arm. Finally, a March 1997 civilian examination showed a blood pressure of 162/99. It was noted that hypertension was diagnosed in March 1997 at the Betton Clinic. There does not appear to be any additional blood pressure readings contained in the Veteran's service treatment records, and there is no diagnosis of hypertension in the Veteran's service treatment records.

Private treatment records show the earliest documentation of hypertension was in January 1996.

On February 2014 VA examination, the examiner noted the Veteran has hypertension and that such was diagnosed in 1996. The examiner indicated that the Veteran's hypertension was less than likely caused or aggravated by service. He essentially reasoned that the time of onset of the hypertension and service exit were not within one year of each other. He further noted that it had been established that the Veteran's Nation Guard duty in the 1990's did not constitute active duty time.

As previously discussed, the Board found that the opinion was inadequate, especially in light of the fact that the opinion was rendered prior to any actual verification of the Veteran's ACDUTRA dates of service. It was also noted that the opinion was lacking in sound rationale. Therefore, an addendum opinion was requested. 

In October 2014, the same examiner indicated that he again reviewed the Veteran's VBMS file and noted additional active duty dates to include January 1991 to June 1991; and November 2003 to September 2004. He indicated that the Veteran was first diagnosed with hypertension in 1996, and noted that he did not find any evidence of ACDUTRA during that year in either the Arkansas or Washington National Guard. The examiner said that it is his conclusion, same as before, that unless it can be shown that the Veteran had ACDUTRA for the National Guard in 1996, which he was unable to prove independently, then his previous remarks hold that the hypertension is not related to service, or aggravated by service. In terms of aggravation, the examiner noted, there was certainly nothing in the claims file that would suggest aggravation for hypertension if the Veteran was indeed active duty between November 2003 and September 2004. The Board parenthetically notes that it is unclear how the examiner determined that such dates were a period of active duty as official documentation does not verify such characterization.

Thereafter, additional evidence was received that showed the Veteran had ACDUTRA in 1998, and based on this evidence in June 2015 the examiner provided a positive opinion with regards to the diabetes claim, which was also on appeal at the time. With regard to hypertension, the examiner noted that his opinion remained the same. He indicated that the hypertension diagnosis, which was in 1996, was 2 years before active duty resumed and 5 years after active duty terminated in 1991.

The Board has first considered whether service connection is warranted on a presumptive basis for hypertension. The Board notes that a single blood pressure reading on his May 1991 active duty separation examination report is documented to be 144/94. The Board notes, however, there is no further documentation or a diagnosis of hypertension or any complaints of, or treatment for, hypertension prior to January 1996. Regardless of the high blood pressure reading on the May 1991 examination, the clinical evidence of record fails to show that the Veteran manifested hypertension to a degree of 10 percent within the one year following his active duty service discharge in either August 1978 or June 1991 [which would have to show a diastolic pressure predominately 100 or more, or; systolic pressure predominately 160 or more, or; minimum evaluation for an individual with a history of diastolic pressure predominately 100 or more who requires continuous medication for control]. In fact, the records suggest that hypertension did not manifest prior to 1996. Furthermore, the Veteran does not contend that he had symptoms of hypertension within a year of discharge, or has experienced a continuity of such symptomatology since service. Notably, on his May 2008 claim, the Veteran reported that his hypertension began in 1996. Therefore, presumptive service connection, to include on the basis of continuity of symptomatology, is not warranted for hypertension. 38 U.S.C.A. §§ 1101, 1112, 1137; 38 C.F.R. §§ 3.307, 3.309; Walker, supra. 

Furthermore, the Board finds that, while the Veteran has a current diagnosis of hypertension, such is not shown to be causally or etiologically related to any disease, injury, or incident during active duty, and was not incurred or aggravated during a period of ACDUTRA.

As an initial matter, the Board finds that the opinions proffered by the October 2014 and June 2015 VA examiner considered all of the pertinent evidence of record, to include the statements of the Veteran, and provided a complete rationale, relying on and citing to the records reviewed. Moreover, the examiner offered clear conclusions with supporting data as well as reasoned medical explanations connecting the two. See Nieves-Rodriguez, supra; Stefl, supra. Therefore, the Board accords great probative weight to such opinions. There is no contrary medical opinion of record. 

The Board notes that the Veteran has contended that his current hypertension is related to his service and National Guard duty. As noted, lay witnesses are competent to provide testimony or statements relating to symptoms or facts of events that the lay witness observed and is within the realm of his or her personal knowledge, but not competent to establish that which would require specialized knowledge or training, such as medical expertise. Layno, supra. Lay evidence may also be competent to establish medical etiology or nexus. Davidson, supra. However, "VA must consider lay evidence but may give it whatever weight it concludes the evidence is entitled to" and a mere conclusory generalized lay statement that service event or illness caused the claimant's current condition is insufficient to require the Secretary to provide an examination. Waters, supra. 

In the instant case, the Board finds that the question regarding the potential relationship between the Veteran's hypertension and any instance of his service to be complex in nature. See Woehlaert, supra. Here, while the Veteran is competent to describe his current manifestations of hypertension as well as his history of treatment for such disorder, the Board accords such statements regarding the etiology of such disorder little probative value as he is not competent to opine on such a complex medical question. Specifically, where the determinative issue is one of medical causation, only those with specialized medical knowledge, training, or experience are competent to provide evidence on the issue. See Jones v. Brown, 7 Vet. App. 134, 137-38 (1994). In this regard, the diagnosis of hypertension requires the administration and interpretation of blood pressure readings. There is no indication that the Veteran possesses the requisite medical knowledge to take blood pressure readings and interpret their results. 

Moreover, the Veteran has offered only conclusory statements regarding the relationship between his service and his current hypertension. Therefore, as the Veteran does not have the appropriate medical training and expertise to competently provide a relationship between such disability and service, the lay assertions in this regard have no probative value.

With regard to his assertion that hypertension is related to his National Guard service, to qualify for service connection, hypertension must be incurred or aggravated during ACDUTRA. See 38 C.F.R. §§ 3.6, 3.303, 3.304. Onset during INACDUTRA could not establish service connection, because hypertension is a disease. See 38 C.F.R. § 3.6. In a May 1999 civilian examination it was reported that hypertension was diagnosed in 1997 at the Betton Clinic. In his May 2008 claim for service connection, the Veteran reported being diagnosed with hypertension in 1996. Also, in his April 2010 notice of disagreement, the Veteran indicated that he believed he had elevated blood pressure while on active duty and in the National Guard. The Board notes, however, he has not reported that he was diagnosed during a period of ACDUTRA. He also did not report any particular injury or trauma, which could have caused or aggravated hypertension. Further, in an October 2014 opinion, the VA examiner noted that there was no evidence that hypertension was aggravated during any periods of service. As such, the evidence does not show that hypertension was incurred or aggravated during ACDUTRA or INACDUTRA in the National Guard. 

Therefore, the Board finds that hypertension is not related to any disease, injury, or incident during active duty, did not manifest within one year of discharge from active duty, and was not incurred or aggravated during a period of ACDUTRA. In reaching this decision, the Board has considered the applicability of the benefit of the doubt doctrine. However, the preponderance of the evidence is against the Veteran's claim of entitlement to service connection for hypertension. As such, that doctrine is not applicable in the instant appeal, and his claim must be denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert, supra.


ORDER

Service connection for hypertension is denied.



______________________________________________
A. JAEGER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs