Citation Nr: 1719260 
Decision Date: 05/10/17 Archive Date: 06/06/17

DOCKET NO. 13-14 295 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Jackson, Mississippi


THE ISSUES

1. Entitlement to service connection for peripheral vascular disease (PVD) of the right lower extremity, to include as secondary to herbicide exposure and/or to his service-connected disabilities.

2. Entitlement to service connection for PVD of the left lower extremity, to include as secondary to herbicide exposure and/or to his service-connected disabilities. 


ATTORNEY FOR THE BOARD

N. Laroche, Associate Counsel


INTRODUCTION

The Veteran served on active duty from January 1966 to February 1974 and from February 1983 to January 1986 in the United States Air Force. He served in Vietnam from December 1968 to December 1969. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a July 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Jackson, Mississippi, which denied the Veteran's claims for entitlement to service connection for PVD of the right and left lower extremities, to include as secondary to herbicide exposure and/or to his service-connected diabetes, and entitlement to service connection for degenerative changes in his left hip. In September 2011, the Veteran filed a timely notice of disagreement (NOD), in which he contended that his PVD was secondary to his service-connected ischemic heart disease (IHD). In May 2013, the Veteran perfected his appeal to the Board (via a VA Form 9) where he stated that he only wanted to appeal the claims for entitlement to service connection for PVD of the right and left lower extremities as secondary to IHD. 

In March 2015, the Board recharacterized the claims to entitlement to service connection for PVD of the right lower extremity, including as due to herbicide exposure or service-connected IHD, and entitlement to service connection for PVD of the left lower extremity, including as due to herbicide exposure or service-connected IHD. The Board remanded the claims for further development. 

In October 2015 and May 2016, the claims were, again, remanded for further development. 

In the May 2016 remand, the Board recharacterized the claims to entitlement to service connection for PVD of the right lower extremity, to include as secondary to herbicide exposure and/or to his service-connected disabilities and entitlement to service connection for PVD of the left lower extremity, to include as secondary to herbicide exposure and/or to his service-connected disabilities. 


FINDINGS OF FACT

1. PVD did not manifest in service and is unrelated to service, to include presumed Agent Orange exposure.


2. The Veteran's service-connected disabilities did not cause or aggravate his PVD. 


CONCLUSIONS OF LAW

1. The criteria for service connection for PVD of the right lower extremity, to include as secondary to herbicide exposure and/or to his service-connected disabilities, have not been met on a direct, secondary, or presumptive basis. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1116, 5103A, 5107(b) (West 2015); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.310 (2016).

2. The criteria for service connection for PVD of the left lower extremity, to include as secondary to herbicide exposure and/or to his service-connected disabilities, have not been met on a direct, secondary, or presumptive basis. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1116, 5103A, 5107(b) (West 2015); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.310 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159. 

Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159 (b)(1); Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

Generally, VCAA notice, as required by 38 U.S.C.A. § 5103 (a), must be provided to a claimant before the initial unfavorable AOJ decision on a claim for VA benefits. See Pelegrini v. Principi, 18 Vet. App. 112 (2004).

Here, the Veteran was sent a letter in October 2010 that fully addressed all notice elements and was issued prior to the initial RO decision in this matter. Thus, the Board finds the duty to notify has been met and no further development is required with respect to the duty to notify.

Next, VA has a duty to assist the Veteran in the development of the claim. This duty includes assisting him in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). The claims file contains the Veteran's service treatment records, as well as post-service reports of VA examinations and VA treatment, and private treatment records.

As previously discussed, in March 2015, the Board remanded the Veteran's claims to the RO for further development. The Board's directives included obtaining VA treatment records, an addendum opinion from the VA examiner who conducted the May 2012 VA examination to determine whether the Veteran's PVD of the bilateral lower extremities is related to service, to include in-service exposure to herbicides, and an opinion as to whether his PVD is secondary to his service-connected IHD. The RO obtained the outstanding VA treatment records, however, the Board did not find the addendum opinion to be adequate, as the examiner did not address whether the Veteran's IHD caused or aggravated his PVD. Subsequently, in October 2015, the Board remanded the claims in order for the Veteran to obtain a VA examination to determine the etiology of his PVD. 

A VA examination was conducted in November 2015 and the possibility that the Veteran's service-connected diabetes contributing to his PVD arose. Consequently, in May 2016, the Board remanded the claims once more to ask the examiner to clarify whether diabetes aggravates PVD. 

As will be discussed further, the Board finds that the June 2016 VA opinion is adequate, as it is predicated on consideration of the medical records in the Veteran's claims file, as well as specific examination findings and the Veteran's own contentions. Stefl v. Nicholson, 21 Vet. App. 120, 123-25 (2007).

For the above reasons, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist the Veteran in the development of the claim.

II. Service Connection

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303(a). Service connection also may be granted for a disability shown after service, when all of the evidence, including that pertinent to service, shows that it was traceable to a disease or injury incurred or aggravated in service. 38 C.F.R. § 3.303(d).

Establishing service connection generally requires competent evidence of three things: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship, i.e., a nexus, between the current disability and an in-service precipitating disease, injury or event. Fagan v. Shinseki, 573 F.3d 1282, 1287 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a). The absence of any one element will result in denial of service connection. Coburn v. Nicholson, 19 Vet. App. 427, 431 (2006).

Pursuant to 38 C.F.R. § 3.303(b), where a chronic disease is shown as such in service, subsequent manifestations of the same chronic disease are generally service connected. If a chronic disease is noted in service but chronicity in service is not adequately supported, a showing of continuity of symptomatology after separation is required. Entitlement to service connection based on chronicity or continuity of symptomatology pursuant to 38 C.F.R. § 3.303(b) applies only when the disability for which the Veteran is claiming compensation is due to a disease enumerated on the list of chronic diseases in 38 U.S.C.A. § 1101(3) or 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Peripheral vascular disease is not a "chronic disease" listed under 38 C.F.R. § 3.309 (a); therefore, the provisions of 38 C.F.R. § 3.303 (b) do not apply. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Absent affirmative evidence to the contrary, there is a presumption of exposure to herbicides (to include Agent Orange) for all veterans who served in Vietnam during the Vietnam Era (the period beginning on January 9, 1962, and ending on May 7, 1975). 38 U.S.C.A. § 1116 (f) and 38 C.F.R. § 3.307 (a)(6). VA laws and regulations provide that, if a veteran was exposed to Agent Orange during service, certain listed diseases, such as diabetes mellitus, type II, are presumptively service-connected. 38 U.S.C.A. § 1116 (a)(1); 38 C.F.R. § 3.309 (e). A veteran who "served in the Republic of Vietnam" between January 9, 1962 and May 7, 1975 is presumed to have been exposed during such service to Agent Orange. 38 U.S.C. § 1116 (f); 38 C.F.R. § 3.307(a)(6)(iii).

Furthermore, if a veteran was exposed to an herbicide agent (to include Agent Orange) during active military, naval, or air service, certain diseases, including diabetes mellitus, type II shall be service-connected if the requirements of 38 C.F.R. § 3.307 (a)(6) are met, even if there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 C.F.R. § 3.307 (d) are also satisfied. 38 C.F.R. § 3.309 (e). Thus, a presumption of service connection arises for these veterans (presumed exposed to Agent Orange) or, alternatively, a veteran without appropriate service (as described above) but with competent evidence of herbicide exposure, who develops one of the identified diseases.

Service connection may be granted for a disability which is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310 (a) (2016). In addition, a claimant is entitled to service connection on a secondary basis when it is shown that a service-connected disability has chronically aggravated a nonservice-connected disability. Allen v. Brown, 7 Vet. App. 439 (1995). 38 C.F.R. § 3.310 (b) provides that any increase in severity of a nonservice-connected disease or injury proximately due to or the result of a service-connected disease or injury, and not due to the natural progress of the disease, will be service connected. In reaching this determination as to aggravation of a nonservice-connected disability, consideration is required as to the baseline level of severity of the nonservice-connected disease or injury (prior to the onset of aggravation by service-connected condition), in comparison to the current level of severity of the nonservice-connected disease or injury.

The Veteran contends that his diagnosed PVD is secondary to his service-connected IHD (and later expanded to include his service-connected diabetes). 

The Veteran's STRs do not contain notations of complaints or a diagnosis of PVD. The Veteran's October 1965 induction report of medical examination noted no pain or pressure in his chest, no palpitation or pounding heart, and no cramps in his legs. He reported that he was in good health. In his October 1965 report of medical examination, lungs and chest were marked as "abnormal," as well as heart (thrust, size, rhythm, sounds). However, the examiner's notes are unclear regarding the description of the abnormality. Every Veteran is presumed to have been in sound condition at entry into service except as to defects, infirmities, or disorders noted at the time of such entry, or where clear and unmistakable evidence demonstrates that the injury or disease existed before entry and was not aggravated by such service. 38 U.S.C.A. § 1111. The term "noted," in 38 U.S.C.A. § 1111, refers to "[o]nly such conditions as are recorded in examination reports." 38 C.F.R. § 3.304(b). A "[h]istory of preservice existence of conditions recorded at the time of examination does not constitute a notation of such conditions." 38 C.F.R. § 3.304(b)(1); see also Crowe v. Brown, 7 Vet. App. 238, 245 (1994). As no defects were noted at entry into service, the Veteran is presumed sound, and there is no clear and unmistakable evidence that PVD preexisted service such that the presumption is rebutted.

In a July 1969 report of medical history, the Veteran reported good health. No pain or pressure in chest, palpitation or pounding heart, or cramps in legs were noted. In a July 1969 examination report, the Veteran's heart (thrust, size, rhythm, sounds) were normal as well as his lower extremities (strength, range of motion).

In November 1977, the Veteran received a periodic examination where his lungs and chest were marked as normal, his heart (thrust, size, rhythm, sounds) were marked as normal, and his lower extremities (strength, range of motion) were marked as normal. In a June 1979 occupational health history report, the Veteran indicated no difficulty in breathing, chest or heart trouble, chest or heart pains, high blood pressure, or any lung diseases. He further indicated no numbness or tingling sensation of any limb or portion of his body or unsteadiness while standing or walking. 

In May 1980, he was seen by a physician for chest pains and trouble breathing. The Veteran had pain that lasted for a couple of hours. He described it as "pressure," and was also coughing. At the time of the examination, the pain was gone. His lungs were determined to be clear and his heart was within normal limits. In a February 1980 occupational health history report, the Veteran indicated no difficulty in breathing, chest, or heart trouble, chest or heart pains, high blood pressure, or any lung diseases. He also noted no numbness or tingling sensation of any limbs or portion of his body, or unsteadiness while standing or walking.

In a September 1981 report of medical history, the Veteran reported good health. He reported no pain or pressure in chest, no palpitation or pounding heart, no heart trouble, and no cramps in his legs. In the September 1981 periodic report of medical examination, his heart (thrust, size, rhythm, sounds) was considered normal as well as his lower extremities (strength, range of motion).

In a June 1985 report of medical history, the Veteran indicated that he had pain or pressure in his chest. He further indicated that he had no heart trouble, no palpitation or pounding heart, and no cramps in his legs. In the June 1985 separation report of medical examination, the Veteran's lungs and chest, heart (thrust, size, rhythm, sounds) and upper and lower extremities were all normal. The examiner noted that the Veteran complained of pain in chest in 1984, and an electrocardiogram test (EKG) was normal. 

Post service, the Veteran was seen at Rush Foundation Hospital where he received a number of procedures from his cardiologist and other private physicians. During a March 2009 physical, the Veteran reported left foot pain and discomfort. His examination revealed that he had cool mottling toes of the left foot and the right foot was warm. In March 2009, he was diagnosed with end stage PVD with rest pain in his left lower extremity and received an above left knee amputation. In a May 1999 consultation report, the Veteran reported smoking two to three packs per day since he was 12 years old. A cardiovascular examination revealed a regular heart rate and rhythm without murmur, gallop, or rub. His EKG was within normal limits. Later that month, he received a left heart cardiac catheterization, coronary cineangiography, and a left ventriculography. The private physician found single vessel atherosclerotic coronary vascular disease (ASCVD) and normal left ventricular systolic function. In July 1999, the Veteran was seen for a consultation and reported two episodes of chest pain since his heart catheterization, and denied heart failure symptoms. His operative report reflects that he received a common femoral artery to common femoral artery bypass and was diagnosed with severe PVD with occluded right common iliac artery. The physician further stated that the Veteran had severe lifestyle-limiting claudication involving his right lower extremity. In June 2006, the Veteran complained of right leg discomfort, difficulty walking, and new onset left leg complaints. A discharge summary revealed that the Veteran received a thrombectomy left femoropopliteal (fem-pop) graft and a thrombectomy of tibial vessel anterior tibial on the left. He was diagnosed with ischemic left lower extremity and severe PVD. In February 2007, the Veteran was seen for a physical where he complained of acute onset of left lower extremity pain. His left lower extremity was examined and appeared cool and pale like. His operative report reflects that he received a thrombectomy left fem-pop graft and a thrombectomy of tibial vessel anterior tibial on the left. He was, again, diagnosed with severe PVD and ischemic left lower extremity.

In a November 2010 statement in support of claim (VA Form 21-4138), the Veteran indicated that he had leg problems for the previous 15 years. He noted multiple leg operations and amputation of the left leg in 2009, as well as his Vietnam service.

A May 2011 VA examination report reflects that the Veteran has the following diagnoses: IHD; hypertension, essential; hyperlipidemia; and PVD, status post left above-knee amputation. The examiner stated that the Veteran first developed symptoms of IHD in 1999 and subsequently underwent a heart catheterization. He was found to have one-vessel disease and did not require any type of intervention. He has been asymptomatic since that time. The Veteran reported that he has been smoking for approximately 40 years and smokes, on average, one pack a day. Upon examination, the examiner noted that the Veteran's right foot was warm to palpation, but the pulse was very faint. 

A May 2012 VA examination was conducted and the examiner noted the Veteran's diagnoses of peripheral artery disease (PAD), PVD, and carotid artery disease from 1998. The examiner opined that there was no relationship between the Veteran's PAD and his service-connected IHD. The examiner explained that the Veteran's PAD predated his IHD, which by itself, will not cause PAD. He stated that his IHD first developed in 1999; he underwent a heart catheterization, and has been asymptomatic ever since. 

Pursuant to the Board's March 2015 remand, a June 2015 medical opinion was obtained to address whether the Veteran's service-connected IHD caused or aggravated his PVD. The examiner opined that the Veteran's PVD or PAD was not caused by exposure to Agent Orange, and was not presumed secondary to Agent Orange exposure. He stated that the Veteran's STRs are silent regarding PVD workup in service, and based on that, the Veteran's PVD was not caused by exposure to the herbicide Agent Orange. He further emphasized that the original diagnosis of PVD was in 1998, which predates the diagnosis date of 1999 for his IHD. He opined that the IHD did not cause the Veteran's PVD, nor was the PVD aggravated by the service-connected IHD. 

Pursuant to the Board's October 2015 remand, a November 2015 VA examination was conducted to determine the etiology of the Veteran's PVD. The Veteran reported that he was diagnosed with PVD in the "1990's," and had several procedures as a result of his diagnosis. He also reported that he continued to smoke one to two packs per day. He reported comorbid hyperlipidemia, hypertension, and diabetes. The examiner opined that current medical literature does not link the development of, or aggravation of, PVD to Agent Orange or other herbicide exposure. There was no evidence of PVD during the Veteran's military service. The examiner further stated that medical literature continues to show that the single most significant cause of PVD is tobacco abuse. He also opined that the Veteran's comorbid vascular risk factors of hypertension, hyperlipidemia, aging, and diabetes (which was newly diagnosed in 2014) also contributed to the course of PVD over time. He stated that the newly diagnosed diabetes was not the cause of his long prior history of PVD. When asked to provide an opinion regarding any connection between the Veteran's PVD and his service-connected IHD, the examiner stated that the Veteran's PVD was not symptomatic and diagnosed before his IHD (in 1999); and IHD does not cause PVD. The examiner stated that the only connection between IHD and PVD was that they are related to the same vascular risk factors. He concluded that it was less likely as not (less than 50/50 probability) that the Veteran's PVD was caused by, or aggravated by, his service-connected IHD. 

In June 2016, another VA examination was conducted to determine whether the Veteran's diabetes aggravated his PVD. The examiner stated that there was no evidence of PVD during the Veteran's military service. He stated that medical literature continues to show that the single most significant cause of PVD is tobacco abuse, and that the comorbid vascular risk of hypertension, hyperlipidemia, aging, and diabetes also contribute to the course of PVD over time. He further stated that the Veteran's newly diagnosed diabetes was not the cause of his long prior history of PVD. He concluded that it was less likely as not (less than 50/50 probability) that the Veteran's PVD of either right or left lower extremity was incurred in, or caused by his military service. In addition, the Veteran's service-connected diabetes mellitus was recently and acutely diagnosed, and has been well-controlled. Therefore, it is his medical opinion that it is less likely as not (less than 50/50 probability) that the Veteran's PVD of either right or left lower extremity has been aggravated (permanently worsened) beyond normal progression by his diabetes mellitus. He further explained that the Veteran was diagnosed with PVD in the 1990s and concluded that the overwhelming cause of the Veteran's PVD is his long, and continuing, history of tobacco abuse.

A. Presumptive Service Connection

The Veteran's DD 214 reflects that the Veteran was stationed at Phu Cat Ab Vietnam in 1969. He is therefore presumed to have been exposed to Agent Orange. 38 U.S.C. § 1116 (f); 38 C.F.R. § 3.307(a)(6)(iii).

The Veteran contends that his diagnosed PVD is due to his exposure to Agent Orange. However, PVD is not among the listed diseases associated with Agent Orange exposure. VA's Secretary has determined that a presumption of service connection based on exposure to herbicides used in the Republic of Vietnam during the Vietnam era is not warranted for any condition for which the Secretary has not specifically determined a presumption of service connection is warranted. See 67 Fed. Reg. 42600-42608 (2002). Therefore, service connection based on an Agent Orange presumptive basis must be denied. 

The failure to meet the criteria for a presumption does not, however, preclude a veteran from establishing entitlement to service connection on a different basis. See 38 U.S.C.A. § 1113 (b); 38 C.F.R. § 3.303 (d) (the availability of service connection on a presumptive basis does not preclude consideration of service connection on a direct basis); Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994) (Radiation Compensation Act does not preclude a veteran from establishing service connection with proof of actual direct causation). The Veteran could show that his PVD is otherwise related to service.

B. Direct Service Connection

On a direct service connection basis, the Veteran has a current diagnosis of PVD, satisfying the first element.

The dispositive issue for direct service connection in this case is whether the Veteran's diagnosed PVD had its onset in or is related to his military service, to include his presumed exposure to Agent Orange.

As noted above, the Veteran's STRs do not contain notations of complaints, symptoms, or a diagnosis of PVD. In a July 1969 report of medical history, the Veteran reported no cramps in his legs. In the July 1969 report of medical examination, his lower extremities (strength, range of motion) were marked as normal. In a June 1979 occupational health history report, the Veteran indicated no numbness or tingling sensation of any limb or portion of his body or unsteadiness while standing or walking. In November 1977, the Veteran received a periodic examination where his lower extremities (strength, range of motion) were marked as normal. In May 1980, he was seen by a physician for chest pains and trouble breathing. In a February 1980 occupational health history report, indicated no numbness or tingling sensation of any limbs or portion of his body, or unsteadiness while standing or walking. In a September 1981 report of medical history, the Veteran reported no cramps in his legs. In the September 1981 periodic report of medical examination, his lower extremities (strength, range of motion) were marked as normal. In a June 1985 report of medical history, the Veteran indicated that he had no cramps in his legs. In the June 1985 separation report of medical examination, the examiner noted the Veteran's lower extremities (strength, range of motion) to all be normal. 

Thus, there was no evidence of PVD in service or for many years thereafter. The Veteran stated in November 2010 that he had leg problems for the previous 15 years, indicating onset of symptoms in the mid-1990s. The November 2015 VA examiner opined that it is less likely as not (less than 50/50 probability) that the Veteran's PVD was caused by, or related to, and/or aggravated by the Veteran's Agent Orange/herbicide exposure or his military service. He explained that there was no evidence of PVD during the Veteran's military service, and that current medical literature did not link the development of PVD to Agent Orange or other herbicide exposure. The June 2016 VA examiner found that it is less likely as not (less than 50/50 probability) that the Veteran's PVD of either right or let lower extremity was incurred in, or caused by his military service. He reiterated the fact that medical literature continues to show that the single most significant cause of PVD was tobacco use, and opined that the overwhelming cause of the Veteran's PVD is his long, and continuing, history of tobacco abuse. 

For the following reasons, the Board finds that the preponderance of the evidence weights against a finding of service connection on a direct basis. First, there is no evidence of PVD or its symptoms in service or for many years thereafter and the Veteran has not indicated that he experienced continuity of symptoms. Second, the medical evidence weighs against the claim. The November 2015 and June 2016 medical opinions included explanation of the reasons for the conclusions based on an accurate characterization of the evidence of record, with references to medical literature and the service treatment records. These opinions are thus entitled to substantial probative weight. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (most of the probative value of a medical opinion comes from its reasoning; threshold considerations are whether the person opining is suitably qualified and sufficiently informed). Third, the evidence reflects a lack of continuity of symptomatology, as the Veteran indicated on the 1985 report of medical history that he did not have cramps in his legs or other symptoms that could be indicative of PVD and in his post service statements indicated an onset of leg symptoms in the mid-1990s.

Fourth, to the extent that the Veteran has opined that his PVD is related to service, to include his Agent Orange exposure, lay witnesses are competent to opine as to some matters of diagnosis and etiology, and the Board must determine on a case by case basis whether a veteran's particular disability is the type of disability for which lay evidence is competent. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). In this case, the Veteran's testimony as to the etiology of his PVD, to include its possible relationship to Agent Orange exposure, is testimony as to an internal medical process which extends beyond an immediately observable cause-and-effect relationship that is of the type that the courts have found to be beyond the competence of lay witnesses. Compare Jandreau v. Nicholson, 492 F.3d 1372, 1376 (Fed. Cir. 2007) (witness capable of diagnosing dislocated shoulder); Falzone v. Brown, 8 Vet. App. 398, 403 (1995) (lay person competent to testify to pain and visible flatness of his feet); with Clemons v. Shinseki, 23 Vet. App. 1, 6 (2009) ("It is generally the province of medical professionals to diagnose or label a mental condition, not the claimant"); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (unlike varicose veins or a dislocated shoulder, rheumatic fever is not a condition capable of lay diagnosis); Jandreau, 492 F.3d at 1377, n.4 ("sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer"). See also Colantonio v. Shinseki, 606 F.3d 1378, 1382 (Fed. Cir.2010) (recognizing that in some cases lay testimony "falls short" in proving an issue that requires expert medical knowledge). The Veteran's statements are therefore not competent in this regard. To the extent that these lay statements are competent, the Board finds the specific, reasoned opinions of the VA examiners to be of greater probative weight than the Veteran's more general lay assertions.

Thus, the preponderance of the evidence is against a relationship between the Veteran's PVD and service, to include his presumed Agent Orange exposure.

C. Secondary Service Connection

The Veteran contends that his diagnosed PVD was caused or aggravated by his service-connected IHD or service-connected diabetes mellitus, type II. 

In regard to the Veteran's service-connected IHD, there is conflicting evidence as to the date of diagnosis for his PVD and IHD. The May 2012 VA examiner opined that there was no relationship between the Veteran's PAD and his IHD, and partially based his opinion on the fact that the Veteran's PAD/PVD was originally diagnosed in 1998, while the IHD was diagnosed in 1999. The examiner further explained that the Veteran's PAD/PVD predates his IHD, which by itself, will not cause PAD. In a June 2015 VA medical opinion, he reiterated the fact that the original diagnosis of PVD predated the diagnosis of IHD, and concluded that the IHD did not cause the Veteran's PVD, nor was the PVD aggravated by the IHD. In the November 2015 VA examination report, the Veteran reported that he was diagnosed with PVD in the 1990's. The examiner, again, opined that the Veteran's PVD was not symptomatic and diagnosed before his IHD in 1999, and IHD does not cause PVD. In June 2016, the VA examiner documented the date of diagnosis of the Veteran's PVD to be in the 1990s. 

Notwithstanding the conflicting diagnosis dates, the examiners in May 2012, June 2015, and November 2015, found that IHD, by itself, does not cause PVD. In the June 2015 VA examination, the examiner stated that IHD did not cause the Veteran's PVD, nor was the PVD aggravated by the service-connected IHD. In November 2015, the examiner found that the only connection between IHD and PVD was that they both are related to the same vascular risk factors. 

In regard to the Veteran's service-connected diabetes mellitus, type II, the June 2016 VA examiner stated that comorbid vascular risk factors of hypertension, hyperlipidemia, aging, and diabetes also contributed to the course of PVD over time. He explicitly stated that the Veteran's diabetes is not a cause of his long prior history of PVD. In June 2016, the examiner further explained that the Veteran's service-connected diabetes was recently and acutely diagnosed in June 2014, and his hemoglobin A1c testing (HbA1cs) reflected that his diabetes has been well controlled since June 2015, thus indicating a lack of aggravation.

As the above opinions explained the reasons for their conclusions based on an accurate characterization of the evidence of record, they are entitled to substantial probative weight. Nieves-Rodriguez, 22 Vet. App. at 304. Moreover, there is no contrary medical opinion in the evidence of record. In addition, the Board has considered the Veteran's lay statements indicating a relationship between his PVD and service connected IHD. As noted above, while lay witnesses are competent to opine as to some medical matters, the Veteran's testimony as to the relationship between his PVD and IHD is testimony as to an internal medical process which extends beyond an immediately observable cause-and-effect relationship that is of the type that the courts have found to be beyond the competence of lay witnesses. Jandreau, 492 F.3d at 1377, n. 4. The Veteran's lay statements in this regard are therefore not competent. To the extent they are competent, the Board finds the specific, reasoned opinions of the VA examiners to be of greater probative weight than the Veteran's lay assertions.

The weight of the evidence is thus against service connection for PVD on a secondary basis.



Conclusion

For the foregoing reasons, the preponderance of the evidence is against service connection for PVD of the lower extremities on a presumptive, direct, and secondary basis. The benefit of the doubt doctrine is therefore not for application and the claim must be denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

 
ORDER

Entitlement to service connection for PVD of the right lower extremity, to include as secondary to herbicide exposure and/or to his service-connected disabilities, is denied.

Entitlement to service connection for PVD of the left lower extremity, to include as secondary to herbicide exposure and/or to his service-connected disabilities, is denied.




____________________________________________
Jonathan Hager
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs